826 P.2d 1337

**William N. ODOM, Jr., Plaintiff–
Appellant,**

v.

**STATE of Idaho, Defendant–Respondent.**

**No. 19095.**

Court of Appeals of Idaho.

Jan. 3, 1992.

Petition for Review Denied March 9, 1992.

William H. Foster, Grangeville, for plaintiff-appellant.

Larry EchoHawk, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for defendant-respondent.

WALTERS, Chief Judge.

In 1986, the appellant, William Odom, pled guilty to two counts of voluntary manslaughter, one count of grand theft, and to a charge of conspiracy to commit robbery. In 1989, he filed an application for post-conviction relief (which was later amended), asserting that his pleas of guilty were not voluntary and that there was a lack of evidence to show he had committed any homicide or entered into a conspiracy to commit robbery. Following an evidentiary hearing on the allegations in Odom's application, the district court denied relief. We affirm.

Odom did not directly appeal from the judgment of conviction entered upon his pleas of guilty. However, a co-defendant, Gerald Pizzuto, who was found guilty by a jury and was sentenced to capital punishment for his participation in the events surrounding the charges levied also against Odom, did pursue a direct appeal. The underlying facts relating to both prosecutions are reported in *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991). Suffice it to say, Odom, Pizzuto, and another individual, James Rice, were charged with two counts of first degree murder, two alternative counts of felony-murder, one count of grand theft, and with the robbery of two victims, Bertha Herndon and her nephew, Del Herndon, following the Herndons' deaths at Ruby Meadows, in Idaho County, Idaho, on July 25, 1985. In addition, Odom was charged with conspiracy to commit robbery of the Herndons and also with conspiracy to commit the robbery of two other individuals, Steven Crawford and Jack Roberts, who were fishing in the same area, near the same time when the Herndons were murdered. Relevant to this case, Odom's wife, Lene Odom, also was charged with one count of grand theft, involving receipt of part of the money or property taken from the Herndons.

Pursuant to a plea bargain, Odom pled guilty to two counts of voluntary manslaughter and to one count of grand theft, for the Herndon incident, and to the charge of conspiracy to rob Crawford and Roberts. In exchange, the state agreed to dismiss all other charges against Odom, to grant him immunity from further prosecution for any transactions or occurrences relating to the pending charges and to recommend sentences of not more than ten years on the manslaughter convictions.[1] After Odom was sentenced following his pleas of guilty, the state dismissed the grand theft charge against Lene Odom.

In his amended application for post-conviction relief, Odom alleged that his pleas of guilty were involuntary. He contended (1) there was not a factual basis to determine that he had committed any manslaughter; (2) there was not any admissible evidence that he had conspired to rob Crawford and Roberts; and (3) his pleas were coerced in that he pled guilty in order to free his wife from prosecution so she could care for their two children. As noted, following an evidentiary hearing, the district court denied Odom's application. In summary, the court determined that there was sufficient admissible evidence to support Odom's convictions and that "the pleas of guilty were in fact entered knowingly, voluntarily, intellectually [sic], and reasonably. Neither the state nor Defendant's attorney placed pressure on the defendant or coerced him into pleading guilty in any way."

On appeal, Odom contends the district court reached the wrong conclusion. He continues to assert that the facts underlying the convictions are not sufficient to support his pleas of guilty and that he pled guilty to attain leniency for his wife.

■ In a post-conviction proceeding brought under I.C. § 19-4901, the burden is on the applicant to establish his grounds for relief by a preponderance of the evidence. I.C.R. 57(c). Also, because proceedings under the Post-Conviction Procedure Act are civil in nature, *Clark v. State,* 92 Idaho 827, 452 P.2d 54 (1969), where there is competent and substantial evidence to support a decision made after an evidentiary hearing on an application for post-conviction relief, that decision will not be disturbed on appeal. *Estes v. State,* 111 Idaho 430, 725 P.2d 135 (1986); *Heck v. State,* 103 Idaho 648, 651 P.2d 582 (Ct.App. 1982).

■ Odom argues that, at the time he pled guilty to manslaughter and conspiracy to commit robbery, no facts were presented to support those charges and, because the district court did not make any finding that

---

1. Evidently, subsequent to the plea bargain, Odom also agreed to testify as a witness for the state in Pizzuto's prosecution. In its opinion in Pizzuto's case, our Supreme Court noted: "James Rice and William and Lene Odom all pled guilty to lesser charges or lesser sentence recommendations in return for their cooperation with the state. They all testified against Pizzuto at his trial." 119 Idaho at 749, 810 P.2d at 687.

the charges had a factual basis, his pleas were not entered voluntarily and intelligently.[2] However, we note there is no requirement that the trial court must establish a factual basis for the crimes charged prior to accepting a guilty plea, *State v. Hawkins*, 117 Idaho 285, 290, 787 P.2d 271, 276 (1990), except where a defendant is unwilling or unable to admit his participation in the crime or continues to assert his innocence while pleading guilty. *Fowler v. State*, 109 Idaho 1002, 712 P.2d 703 (Ct.App.1985). None of these exceptions appear applicable in Odom's case. Our Supreme Court has also observed that a valid guilty plea is a judicial admission of all facts charged, waives all nonjurisdictional defects and defenses, and obviates the necessity of the prosecution going forward with the evidence. *State v. Coffin*, 104 Idaho 543, 545, 661 P.2d 328, 330 (1983).

Odom's decision to plead guilty pursuant to the plea bargain, reducing the first degree murder charges to manslaughter and avoiding the risk of two convictions for robbery and another for conspiracy to commit robbery, evidently was strategically motivated. In *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the defendant Brady was charged with a kidnapping offense carrying the potential penalty of death. Brady entered a guilty plea, to avoid the possibility that the jury might recommend capital punishment upon finding him guilty after a trial. The United States Supreme Court held that Brady's motivation did not render his plea involuntary. Apropos to Odom's situation, the Court said:

> Insofar as the voluntariness of his plea is concerned, there is little to differentiate Brady from ... (3) the defendant who is permitted by the prosecutor and judge to plead guilty to a lesser offense included in the offense charged; and (4) the defendant who pleads guilty to certain counts with the understanding that other charges will be dropped.... We decline

to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face the wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged.

The issue we deal with is inherent in the criminal law and its administration because guilty pleas are not constitutionally forbidden, because the criminal law characteristically extends to judge or jury a range of choice in setting the sentence in individual cases, and because both the State and the defendant often find it advantageous to preclude the possibility of the maximum penalty authorized by law. For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious—his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantages—the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof. It is this mutuality of advantage that perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty, a great many of them no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury.

Of course, that the prevalence of guilty pleas is explainable does not nec-

---

**2.** Odom does not claim that his pleas of guilty were entered without having been fully advised as to his constitutional rights as a defendant in a criminal action. *See State v. Colyer*, 98 Idaho 32, 557 P.2d 626 (1976) *and* I.C.R. 11(c). The record of the plea proceeding shows that the district court thoroughly informed Odom of those rights.

essarily validate those pleas or the system which produces them. But we cannot hold that it is unconstitutional for the State to extend a benefit to a defendant who in turn extends a substantial benefit to the State and who demonstrates by his plea that he is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary.

397 U.S. at 751–53, 90 S.Ct. at 1470–71 (footnotes omitted). *See also North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Here, Odom's pleas of guilty were tendered consistent with the Supreme Court's observations in *Brady.* When those pleas were entered, Odom's counsel explained:

> The evidence against Mr. Odom—to be candid with your honor, both Mr. Odom and I do not feel that his activities rises [sic] to a level of voluntary manslaughter, not in terms of a factual foundation, although there could be argument on both sides. However, in light of the fact that there is a dismissal of the charge of robbery which contained a five to life sentence, dismissal of another conspiracy to commit robbery which contained a five to life sentence, and the dismissal of two different counts, four counts, but basically two different crimes of first degree murder, which potentially carried the death penalties, we felt those circumstances, when added together and the possibility that he could be convicted of first or second degree murder, led us to the conclusion that entering a plea of voluntary manslaughter, the theft charge and conspiracy to commit robbery was in his best interest.
>
> Based upon the fact that as he acknowledges, he believes he is guilty of conspiracy to commit robbery with reference to the Crawford incident, and as he indicated to you, there is more than a factual foundation for the grand theft. The only one that we have dispute with is the voluntary manslaughter, but we feel the dismissals and the certainty of it far

outweighs any potential penalties that he would have.

Odom advised the court that he understood and was in agreement with the strategy of pleading guilty under the circumstances recited by counsel. Based upon this representation and in accordance with *Brady,* we hold that the lack of specific factual findings by the district court of the bases for the charges to which Odom pled guilty did not render his pleas invalid either on the ground of involuntariness or that they were not entered knowingly and intelligently.

We turn next to Odom's claim that his pleas were coerced to obtain a dismissal of the grand theft charge filed against his wife. At the evidentiary hearing on Odom's amended application for post-conviction relief, this point was disputed. Odom testified that his attorney had assured him that, if Odom did not plead guilty, the prosecutor would seek the maximum imprisonment for Lene Odom. The attorney denied that he had made any such representation. Upon reviewing the evidence, the district court found that neither the state nor Odom's attorney had placed pressure on Odom or coerced him in any way into pleading guilty. We have reviewed both the transcripts of the entry of the pleas and the post-conviction proceeding. Competent and substantial evidence supports the district court's conclusion that Odom's pleas were not entered under duress or coercion. Consequently, the court's denial of post-conviction relief will not be disturbed.

The order denying post-conviction relief is affirmed.

SWANSTROM and SILAK, JJ., concur.