853 P.2d 625

STATE of Idaho, Plaintiff–Respondent,

v.

Jerry ALLEN, Defendant–Appellant.

No. 19458.

Court of Appeals of Idaho.

May 27, 1993.

Rehearing Denied May 27, 1993.

Walker & Reagan, Coeur d'Alene, for appellant. Glen E. Walker argued.

Larry J. EchoHawk, Atty. Gen., Kevin P. Cassidy, Deputy Atty. Gen., Boise, for respondent. Kevin P. Cassidy argued.

SILAK, Acting Judge.

Jerry Allen was found guilty by a jury of one count of lewd conduct with a minor, I.C. § 18-1508. Thereafter, Allen substituted counsel and moved the district court for a new trial asserting that his former attorney had failed to provide him with effective assistance at trial. Prior to ruling on Allen's new trial motion, the district court entered a judgment of conviction and sentenced Allen to a unified term of ten years in prison with two years fixed. The district court subsequently denied Allen's motion for a new trial. Allen appeals from the judgment of conviction and the denial of his new trial motion. For the reasons explained below, we vacate the judgment of conviction and remand for a new trial.

## FACTS AND PROCEDURAL BACKGROUND

This case stems from charges that in late June of 1990, Allen committed lewd and lascivious acts on SDC, a six-year-old girl. At the time, SDC's mother, Sherry, was Allen's girlfriend. SDC reported to her mother that two nights previously, when she and her younger brother had spent the night at Allen's residence, Allen had her get in bed with him, after which Allen pulled down her underwear and touched her in her "private spot." SDC testified at trial that when Allen put the children to bed that night he told her to get into his bed, after which Allen removed his pants and underwear, got into bed with SDC, pulled down her underwear and digitally fondled and penetrated her vagina. SDC further claimed that, in order to get away from Allen, she told him she had to go to the bathroom, but Allen soon came into the bathroom and brought her back into bed with him, where he again removed her underwear and digitally penetrated her vagina.

When SDC's mother, Sherry, confronted Allen with SDC's accusations, Allen stated that he had SDC sleep in the same bed with him and his son because she seemed upset by the noise from a storm. Allen conceded that he had rubbed SDC's tummy that night in an attempt to comfort her, because that was how he often comforted his son when he was upset, but he denied any kind of inappropriate touching. SDC, who was present when Allen gave this explanation, responded by telling Allen that he knew he didn't just rub her tummy, that he touched her in her "private spot," and that he was lying. Later that week, Sherry took SDC to Dr. Howard Ashby, a child psychiatrist, to obtain Ashby's opinion whether SDC was misconstruing Allen's touching or whether she actually experienced the sexual abuse that she had reported. Ashby talked with SDC and Sherry for about an hour and became convinced that SDC was relating events which she had actually experienced. Subsequently, Dr. Ashby notified state authorities and an investigation was begun which led to the filing of criminal charges against Allen.

On May 17, 1991, a jury found Allen guilty of lewd conduct with a minor. Prior to sentencing, Allen's present counsel was substituted for his trial counsel. On July 1, Allen's current counsel filed a motion for a new trial pursuant to I.C.R. 34, alleging that Allen had been denied effective assistance of counsel at trial. On July 19, prior to ruling on Allen's new trial motion, the district court sentenced Allen to a unified term of ten years in prison, with two years fixed. That same day Allen filed a motion to stay execution of his sentence. On July 30, Allen appealed from his conviction and sentence, and on September 3, the district court heard arguments on Allen's motions to stay execution of his sentence and his motion for a new trial. In support of his new trial motion, Allen alleged that his trial counsel failed to render effective assistance at trial, and therefore a new trial was required in the interest of justice. After the hearing, the district court denied Allen's new trial motion and his motion to stay execution of his sentence. Allen ap-

peals his judgment of conviction and the district court's denial of his motion for new trial. For the reasons explained below, we vacate Allen's conviction and remand with instructions for a new trial.

## ANALYSIS

■ On appeal, Allen asserts that the district court abused its discretion by denying his motion for a new trial. A trial court may grant a new trial "if required in the interest of justice." I.C.R. 34. "Whether the interest of justice requires a new trial under the circumstances of a particular case is directed to the sound discretion of the trial court; and the trial court's decision thereon will not be disturbed absent an abuse of that discretion." *State v. Scroggins*, 110 Idaho 380, 384, 716 P.2d 1152, 1156 (1986), *cert. denied*, 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986) (citing *State v. Olin*, 103 Idaho 391, 399, 648 P.2d 203, 211 (1982)). In determining whether a district court has abused its discretion, we conduct a multi-tiered inquiry to consider: (1) whether the trial court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

■ Allen's new trial motion was based on a claim of ineffective assistance of counsel. Therefore, we must determine whether the district court correctly applied the standards governing a claim of ineffective assistance in denying Allen's motion. In order to prevail on a claim of ineffective assistance of counsel, the defendant must show: (1) that his counsel's representation was deficient, and (2) that he was prejudiced by his counsel's deficient performance. *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Aragon v. State*, 114 Idaho 758, 760 P.2d 1174 (1988); and *Young v. State*, 115 Idaho 52, 764 P.2d 129 (Ct.App.1988)). In determin-

ing the first question, whether counsel's performance was deficient, the defendant must overcome a strong presumption that counsel's performance was within the "wide range of professional assistance," and show that his attorney's representation fell below an objective standard of reasonableness. *Aragon*, 114 Idaho at 760, 760 P.2d at 1176 (quoting *Strickland, supra*). In order to demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Aragon*, 114 Idaho at 761, 760 P.2d at 1177) (quoting *Strickland, supra*). To determine whether Allen has made this showing, we consider "the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069.

■ We note, initially, that Allen has pursued his ineffective assistance claim through a motion for a new trial, rather than by filing a petition for post-conviction relief. Typically, ineffective assistance claims challenge the information communicated—or not communicated—between the defendant and his trial counsel, as well as other aspects of the attorney's performance, theories and strategies prior to and during trial. Usually, the trial record does not encompass the facts surrounding such matters so as to allow adequate review of trial counsel's performance based solely on the trial record. For this reason we have previously noted that ineffective assistance is an issue rarely appropriate to a direct appeal from a judgment of conviction; rather it is usually reserved to post-conviction relief proceedings, where a more complete evidentiary record can be developed. *State v. Koch*, 116 Idaho 571, 777 P.2d 1244 (Ct.App.1989). This case, however, presents the rare situation where the inadequacy of trial counsel's performance can be determined solely by reviewing the trial transcript.

Allen alleges that his trial attorney should have objected when Dr. Ashby, the child psychiatrist, improperly vouched for SDC's credibility by testifying that, in his opinion, SDC actually experienced the

events which she described. At trial, Ashby proffered the following testimony, as elicited by the prosecutor:

Q. In terms of listening to what [SDC] had to say, did you also observe how she had to say it and listen to the way that it was disclosed to you?

A. That's correct.

Q. Would you mind telling the jury what it is you look for when you're looking at the observations of the child in the way she's disclosing to you?

A. Basically observe if the feeling behind what they're saying is congruent with the words, their sense of initiative, what they're saying, the words that they use to say things. Whether it's spontaneous. I'm sure we have all experienced where a child has memorized something to maybe present in school, or something like that, and it's a little bit canned and not very spontaneous, and so you kind of try to get a feel for those kinds of things, content, the way it's done and their feelings behind it.

Q. What did you note about the way that SDC was able to tell you about this event?

A. I was impressed that she was, for a six year old, was a pretty verbal child, she used age appropriate language. Her feelings, and we call it affect, the way she looked while she was saying these things were congruent. For instance, when she was sitting sometimes looking like she was not paying a whole lot of attention, she looked relaxed and whatever. When she was telling me about the actual experience, she seemed a little bit more nervous which would be consistent.

Later in the interview where mom was giving me some additional information, she piped in, I can't remember if she exactly corrected mom, but kind of like added things to make sure that mom was giving it correct like it was her own information. All in all from that interface with her, I was impressed with the fact that this was a child that I felt had actually experienced this, and this needed to be followed up and needed to be reported to CPS, child protective services,....

So I was both looking at the child, whether what the child said was consistent and seemed reliable and whatever, and also what mom said, if either one of them seemed to have some kind of what we call secondary gain or hidden agenda, or something behind it, and I did not suspect that at all.

Q. You talked about watching to see if this appears to be a memorized or learned statement, did you see anything that would indicate this was a memorized or learned thing?

A. I did not. In fact my impression was that I even put in my note shortly after the interview that I would have a hard time believing that this was not something that the child spontaneously said and was her own information that she was trying to tell me.

. . . .

Q. Maybe you have answered this a little bit already, but did you see anything or did you form an opinion as to whether the information you were hearing was coming from any sort of outside sources as opposed to her actual experience?

A. ... I felt at the time that this child appeared to me to be someone that had actually experienced this and that needed to be investigated.

Allen contends that Dr. Ashby did nothing more than assess and vouch for SDC's credibility, and therefore his opinion that SDC was telling the truth when she reported that Allen fondled and penetrated her vagina was inadmissible testimony because it improperly invaded the province of the jury. We agree.

■ We hold that Ashby's opinion that SDC actually experienced the events as she claimed, based solely on his observations of SDC as she recounted her story, was inadmissible testimony because, while it was highly prejudicial to Allen, it did not 'assist' the jury in rendering its verdict. In *State v. Hester*, 114 Idaho 688, 760 P.2d 27 (1988), our Supreme Court quoted the following language:

It should be remembered that to be a proper subject for expert opinion it is not enough an inference be 'beyond common experience.' The expert opinion must 'assist' the trier of fact. That is, the inference must be one which an expert of a certain type is herself entitled to make as a matter of logic, expertise and law. Where an expert in a given field is not better equipped than a lay person to make that particular inference or if neither an expert nor a lay person is allowed to make that inference then the trier of fact is not 'assisted' by hearing the expert's opinion and such testimony is inadmissible.

*Hester*, 114 Idaho at 695, 760 P.2d at 34 (quoting *Matter of Cheryl H.*, 153 Cal. App.3d 1098, 200 Cal.Rptr. 789 (1984)). In this case, Ashby's testimony was of no assistance to the jury, and therefore inadmissible, because he did not draw any inferences which were beyond common experience, and because the inference that he drew for the jury—that SDC was telling the truth—was one which he was not allowed to make.

In *Hester*, our Supreme Court stated that a qualified expert may render an opinion on an issue when the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to determine the issue. *Hester*, 114 Idaho at 692–93, 760 P.2d at 31–32; I.R.E. 702. The Court further stated that because the behavioral patterns of child sex abuse victims, and whether a child-victim has reacted in ways that are consistent with the behavior of other sexually abused children, are subjects which are beyond the common experience and education of the average juror, whether a child has been sexually abused is an issue upon which a qualified expert may render an opinion. *Hester*, 114 Idaho at 693, 760 P.2d at 32. In this case, however, Ashby did not attempt to diagnose whether SDC was a victim of sexual abuse by performing any diagnostic tests or interview techniques which were beyond the common experience of average jurors; such as comparing whether SDC's behavior patterns were consistent with the behavior patterns of other sexually abused children.[1] Rather, Ashby simply conducted an hour-long personal interview with SDC and her mother, during which he evaluated SDC's credibility (not her symptoms of sexual abuse) by observing such factors as the logical consistency of her story, her body language as she related her story, the congruence between the feelings SDC presented and what she was saying, whether her story seemed "canned" or spontaneous, and whether SDC or her mother appeared to have any ulterior motives for bringing such allegations against Allen. These are the same criteria by which jurors commonly determine the credibility of witnesses. A portion of Ashby's testimony quoted above demonstrates that his assessment of SDC's credibility did not rely on any specialized knowledge or training, but on experience common to all:

> I'm sure we have all experienced where a child has memorized something to maybe present in school, or something like that, and it's a little bit canned and not very spontaneous, and so you kind of try to get a feel for those kinds of things, content, the way it's done and their feelings behind it.

■ Ashby's testimony was also inadmissible because it went beyond the permissible bounds of expert opinion to assess the credibility of SDC, the complaining witness. "[A]n expert's opinion ... is admissible up to the point where an expression of opinion would require the expert to pass upon the credibility of witnesses or the weight of disputed evidence. To venture beyond that point, however, is to usurp the jury's function." *Hester*, 114 Idaho at 695–696, 760 P.2d at 34–35 (citing *State v. Jackson*, 239 Kan. 463, 721 P.2d 232 (1986)). Ashby's opinion regarding SDC's credibility "only served to impermissibly evaluate the circumstances and render the same conclusion the jury was asked to render by its verdict." *Hester*, 114 Idaho at 696, 760

---

**1.** It is questionable, based on the record before us, whether Ashby was even qualified to make such a determination.

P.2d at 35. "In a jury trial, it is for the jury to determine the credibility of a witness, not another witness. Statements by a witness as to whether another witness is telling the truth are prohibited." *State v. Johnson,* 119 Idaho 852, 857, 810 P.2d 1138, 1143 (Ct.App.1991) (citations omitted).

This case presents us with essentially the same issue we addressed in *Johnson.* There, a doctor testified that in his opinion the two alleged victims had been sexually abused. We held that where the only information available to support the doctor's opinion was gleaned from one visit with the children in which the doctor found no evidence of physical abuse, and where the doctor relied solely on the histories provided by the children and the mother in forming his opinion, the doctor's opinion was essentially a judgment on the children's credibility to the effect that they were telling the truth, and therefore inadmissible.

■ Having determined that Ashby's testimony should not have been admitted at trial, we must next determine whether the failure of Allen's attorney to object to this testimony constituted ineffective assistance of counsel. We hold, based on the standards outlined above, that it does. In *Johnson,* we held that under circumstances similar to this case, the admission of this type of testimony constituted fundamental error which deprived Johnson of a fair trial. *Johnson,* 119 Idaho at 857–58, 810 P.2d at 1143–44. In *Johnson,* we also cited the case of *State v. Bowman,* 84 N.C.App. 238, 352 S.E.2d 437 (1987), for the conclusion that where the state's case against the defendant was almost totally dependent on the credibility of the victim, the admission of an expert's improper opinion testimony which bolstered the child-victim's credibility "demonstrated a reasonable possibility that a different result would have been reached at trial had the error not been committed, ..." Similarly, we hold in this case that the failure of Allen's attorney to object to Ashby's testimony—that in his opinion SDC was telling the truth when she reported that Allen had fondled and penetrated her vagina—constituted deficient performance by the attorney which prejudiced Allen's defense. SDC and Allen were the only witnesses who knew what actually happened on the night in question, and there was no physical evidence to support or impeach either of their testimonies. Had Ashby's improper testimony been properly excluded, there is a reasonable probability that the outcome of the trial would have been different. Because we conclude that Allen's representation at trial was constitutionally deficient, the interest of justice requires that he be granted a new trial.

Because this case is being remanded to the district court for a new trial, we will address another evidentiary issue raised by Allen on appeal which will likely resurface during the new trial. I.C. § 1–205; I.A.R. 112. Prior to trial, Allen's attorney referred Allen to Dr. Jack Wright, dba Jack Oakwright, a psychiatrist, for evaluation, and Allen met with Wright on seven different occasions for evaluation and counseling. At trial, the state, without objection, called Wright during its case in chief to testify as a witness against Allen. As the state's witness, Wright testified about arguably incriminating statements which Allen made to him during their meetings. To support his claim of ineffective assistance, Allen has asserted that his trial attorney should have objected to Wright's testimony on the grounds that it consisted of confidential communications between Allen and his agent, or the agent of his attorney, and therefore the communications were privileged from disclosure under I.R.E. 502(b).

Rule 502(b) of the Idaho Rules of Evidence provides that:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client which were made (1) between himself or his representative and his lawyer or his lawyer's representative, ... (4) ... or between the client and a representative of the client, ....

■ In order for the attorney-client privilege to apply, two findings are requisite: (1) the communication must be confidential

within the meaning of the rule, and (2) the communication must be made between persons described in the rule for the purpose of facilitating the rendition of professional legal services to the client. *State v. Jancsek*, 302 Or. 270, 730 P.2d 14, 17 (1986). The attorney-client privilege has been applied in situations where the client has been evaluated by a psychotherapist for the purpose of facilitating the attorney's preparation for trial. *Houston v. State*, 602 P.2d 784 (Alaska 1979) (pretrial psychiatric examination at defense counsel's request came within scope of attorney-client privilege for purpose of prosecution's calling the examining psychiatrist as a rebuttal witness); *People v. Lines*, 13 Cal.3d 500, 119 Cal.Rptr. 225, 531 P.2d 793 (1975) (communications relating to examination of defendant by psychotherapist appointed by court to examine defendant and to prepare confidential report for defense counsel concerning defendant's mental condition were permanently protected from disclosure by attorney-client privilege, absent waiver).

Allen claims that Wright was retained to evaluate him and then consult with his counsel concerning his impressions of certain factual matters and defenses in preparation for trial. Allen also contends that he believed his communications with Wright were confidential. The state asserts that Allen did not make the disputed communications to Wright "for the purpose of facilitating the rendition of professional legal services," but for the purpose of personal evaluation and counseling. The state further contends that even if the communications were made for the purpose of facilitating Allen's attorney's rendition of professional legal services, Wright gave Allen and his attorney express prior notice that he would testify for the state if he obtained evidence which the state would want to produce at trial, and therefore Allen knew that his communications with Wright were not confidential before he ever met with Wright.

Because Allen's trial attorney did not object to the admission of Wright's testimony for the state, the district court made no determination as to whether Allen's communications to Wright came under the attorney-client privilege. The evidence in the record on this issue is conflicting and, in light of our holding above, we need not decide this issue in order to resolve this appeal. However, should the applicability of the attorney-client privilege to Allen's communications to Wright be raised as an issue during Allen's new trial, the district court will have to make factual findings to determine: (1) whether Allen's communications to Wright were made for the purpose of facilitating Allen's attorney's representation of Allen, and (2) whether Allen's communications to Wright were confidential.

## CONCLUSION

Based on the facts and reasoning set forth above, we hold that Allen was denied effective assistance of counsel at trial, and the interest of justice requires that he be granted a new trial. Accordingly, we hold that the district court abused its discretion in denying Allen's motion for a new trial, and we reverse Allen's judgment of conviction and remand the case for a new trial.

WALTERS, C.J., and SWANSTROM, J., concur.