878 P.2d 198

**Terry Dean REYNOLDS,**
**Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 20505.**

Court of Appeals of Idaho.

June 23, 1994.

Petition for Review Denied Aug. 23, 1994.

Stephan, Kvanvig, Greenwood, Stone & Trainor, Twin Falls, for appellant.  Laird B. Stone, argued.

Hon. Larry EchoHawk, Atty. Gen.; Michael J. Kane, Deputy Atty. Gen., Boise, for respondent.  Michael J. Kane, argued.

PERRY, Judge.

Terry Dean Reynolds appeals from orders of the district court: (1) denying his motions for "summary judgment" on his application for post-conviction relief; (2) denying his request to allow jurors to testify at the post-conviction hearing; (3) denying his post-conviction application following a hearing; and (4) denying his motion for relief from judgment following the denial of his post-conviction application.  For the reasons stated below, we affirm.

## FACTS AND PROCEDURE

In the spring of 1990, Terry Dean Reynolds was found guilty by a jury of lewd conduct with a minor under the age of sixteen.  I.C. § 18–1508.  In November of 1991, Reynolds filed an application for post-conviction relief, I.C. § 19–4901, claiming ineffective assistance of counsel at trial.  After the state failed to respond to his application, Reynolds moved for a "summary judgment," which was, in effect, a motion for summary disposition under I.C. § 19–4906.  The district court denied the summary judgment motion and granted the state additional time to file an answer to the application.  The state then filed a general answer to the application.  Following the state's answer, Reynolds moved for a second "summary judgment," which again was a motion for summary disposition.  The second motion was denied, and a hearing on the post-conviction application was held.

At the hearing, Reynolds sought to have various jurors testify about the effect certain alleged errors by counsel had on their verdict.  The state objected to the testimony of the jurors, and the district court ruled that the jurors would not be allowed to testify.  Following the hearing, the district court determined that Reynolds' trial counsel's performance had in fact been deficient, but that Reynolds had failed to establish a reasonable probability that the outcome of the trial would have been different but for the errors of counsel.  The application was therefore denied.

Following the Court of Appeals decision in *State v. Allen*, 123 Idaho 880, 853 P.2d 625 (Ct.App.1993), Reynolds filed a motion for relief from the denial of his post-conviction

application under I.R.C.P. 60(b)(6). This motion was also subsequently denied.

Reynolds now appeals, claiming that the district court erred by denying his original summary judgment motions, by not allowing jurors to testify at the post-conviction hearing, by denying his application for post-conviction relief and by failing to grant his motion for relief from judgment following the release of this Court's decision in *Allen.*

## ANALYSIS

### 1. MOTIONS FOR SUMMARY DISPOSITION

■ Reynolds first argues that his motions for summary disposition were improperly denied. The first motion was made after the state had failed to answer the post-conviction application within the thirty-day period dictated by I.C. § 19–4906. At the hearing on the motion, the district court granted the state an additional twenty days in which to answer the application. Idaho Code § 19–4906 states:

> Within 30 days after the docketing of the application, or within any further time the court may fix, the state shall respond by answer or by motion which may be supported by affidavits.... The court may make appropriate orders for amendment of the application or any pleading or motion, for filing further pleadings or motions, or for extending the time of the filing of any pleading.

This section clearly allows the district court to enter an order extending time to file an answer. Therefore, the district court did not err by granting the state additional time in which to file an answer to the application.

■ The second motion for summary disposition was made after the state answered the application. This motion argued the merits of the application and claimed there were no genuine issues of material fact. Idaho Code § 19–4906(c) allows for summary dismissal, upon motion by either side, when "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law." When reviewing a summary disposition of an application for post-conviction relief, we independently review the record to determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Yon v. State,* 124 Idaho 821, 822, 864 P.2d 659, 660 (Ct.App.1993); *Hoover v. State,* 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct.App.1988).

In denying the motion for summary judgment, the district court noted that, "A complete hearing will be needed before the court can find that defense counsel committed malpractice and that there is a reasonable probability that the jury would have acquitted petitioner but for his lawyer's malpractice. Defense counsel's side of the story could be quite relevant." We agree. In this case, the allegations of malpractice centered around what appeared to be very risky tactics employed by defense counsel. Whether such tactics were part of a designed strategy or were based on ill preparation or ignorance of law would remain a question of fact. A hearing would be required in which defense counsel, and other witnesses, could be examined. Therefore, the district court was correct in denying the second motion for summary dismissal.

### 2. JURORS' TESTIMONY AT POST-CONVICTION APPLICATION HEARING

■ Reynolds also argues that the district court erred by disallowing testimony at the post-conviction application hearing by the jurors from the original trial. He asserts that their testimony was essential to establishing that prejudice resulted from the missteps of defense counsel. Reynolds specifically argues that if further evidence on the victim's credibility had been offered by defense counsel, the verdict would have been different.

Idaho Rule of Evidence 606(b) states:

> Inquiry to validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything

upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror and may be questioned about or may execute an affidavit on the issue of whether or not the jury determined any issue by resort to chance.

The district court refused to admit the evidence because it felt that the jurors' "thought processes and what effect the evidence would have on them [ ] would not be admissible under 606." We agree. We do not believe that the situation here, alleged prejudicial errors by defense counsel and the lack of further evidence on credibility, was meant to be included in the list of exceptions. Reynolds sought to introduce the testimony not to show what prejudicial evidence came in, which would have been a matter of record, but to show how that evidence affected the final verdict. We agree with the district court that this is exactly the type of evidence Rule 606(b) meant to exclude.

■ Reynolds argues that exclusion of the jurors' testimony simply made it impossible to establish prejudice. However, as this Court has previously stated, "the proper standard is whether prejudice reasonably could have occurred, rather than whether prejudice actually has occurred." *Roll v. City of Middleton*, 115 Idaho 833, 837, 771 P.2d 54, 58 (Ct.App.1989). We further stated, that "Rule 606(b) bars jurors from giving evidence concerning their mental processes. Because jurors cannot be questioned as to

whether they were in fact prejudiced by extraneous information, the trial judge must determine whether the information reasonably could have produced prejudice, when evaluated in light of all the events and the evidence at trial." *Id.* The district court recognized the proper standard, stating that the court could still make "the determination that certain evidence, if presented, would have a likelihood of changing the jurors' minds." Therefore, the district court did not err in refusing to allow jurors to testify how the prejudicial information affected their verdict or whether the result would have been different had more evidence on the victim's credibility been adduced.

## 3. DENIAL OF POST–CONVICTION APPLICATION

Reynolds claims that the district court erred by denying his application for post-conviction relief following the evidentiary hearing. He claims that the evidence established deficient performance [1] of counsel and its resulting prejudice, and the district court's determination otherwise was error. Reynolds points to three specific errors committed by defense counsel at trial, as well as alleging cumulative error, in support of his ineffective assistance argument. Reynolds claims that defense counsel: (1) failed to object to evidence that Reynolds had supplied cocaine to a friend of the victim's mother; (2) elicited prejudicial evidence of an alleged prior incident of sexual misconduct committed by Reynolds which involved the victim; and (3) allowed and elicited impermissible testimony of various witnesses regarding the truthfulness of the victim.

■ We first note that an application for post-conviction relief under I.C. § 19–4901 is a special proceeding, civil in nature, and is an entirely new proceeding, distinct from the criminal action which led to the conviction. *Paradis v. State*, 110 Idaho 534, 536, 716 P.2d 1306, 1308 (1986); *State v. Bearshield*,

---

1. The district court, in its order, used the term "ineffective assistance" to describe both the determination that counsel's conduct was deficient and the ultimate conclusion that counsel had been deficient and prejudice was suffered. For clarity, the term "ineffective assistance" should be used to denote the legal determination that, per *Strickland*, an attorney's conduct was deficient *and* the defendant suffered some prejudice as a result of the deficiency. The first prong of the *Strickland* test is best described as "deficient performance," rather than "ineffective assistance."

104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Nellsch v. State,* 122 Idaho 426, 430, 835 P.2d 661, 665 (Ct.App.1992). In a post-conviction proceeding, the burden is on the applicant to establish grounds for relief by a preponderance of the evidence. *Odom v. State,* 121 Idaho 625, 626, 826 P.2d 1337, 1338 (Ct.App. 1992). In order to be granted post-conviction relief, an applicant must show that the "asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt...." I.C. § 19–4901(b). Therefore, Reynolds bore the burden of proof of establishing ineffective assistance by a preponderance of the evidence.

■ In order to prove a claim of ineffective assistance of counsel, an applicant must first show that the attorney's conduct fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). There is a strong presumption that trial counsel's performance falls within the wide range of "professional assistance." *Id.* An applicant must not only show incompetence, but must also show that the deficient conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result, i.e. that some prejudice resulted from the deficient conduct. *Ivey v. State,* 123 Idaho 77, 80, 844 P.2d 706, 709 (1992). In order for the applicant to satisfy the second prong of the test, he or she must establish that there is a reasonable probability that the outcome of the trial would have been different. *Aragon v. State,* 114 Idaho at 761, 760 P.2d at 1177.

■ On reviewing post-conviction applications, once the district court has denied or granted the application following a hearing as provided in I.C. § 19–4907, the evidence must be viewed most favorably to the trial court's findings. *Storm v. State,* 112 Idaho 718, 720, 735 P.2d 1029, 1031 (1987); *Estes v. State,* 111 Idaho 430, 434, 725 P.2d 135, 139 (1986). Findings supported by competent and substantial evidence produced at the hearing will not be disturbed on appeal. *Storm, supra; Holmes v. State,* 104 Idaho 312, 313, 658 P.2d 983, 984 (Ct.App.1983).

## A. Testimony that Reynolds Supplied Cocaine

■ At trial, the prosecution elicited the following testimony from the victim's mother:

[BY THE PROSECUTOR]: Then what happened?

[VICTIM'S MOTHER]: [A friend of the witness] reached into his pocket and handed me a dollar bill that was folded up; and I asked him what it was. He said well open it and I opened it. There was white powder. I don't know if it was cocaine or what it was. I asked him where he got it. He told me he got it from Terry [Reynolds].

Q: What did you say?

A: I said I thought Terry quit.

Q: What did he say?

A: He said he did too, but he got it from Terry ...

Counsel for defense did not object to this testimony, either as inadmissible prior bad acts evidence or as hearsay.

Reynolds includes the failure to object to this testimony as one of the many errors that cumulatively amounted to ineffective assistance. The district court addressed this issue, finding that indeed defense counsel had been deficient in failing to object to the testimony, but that Reynolds had failed to establish the necessary prejudice in order to be granted post-conviction relief. We agree.

The allegation that Reynolds had supplied cocaine to someone does not bear directly on the charges of sexual abuse. It was still arguably inadmissible for irrelevance and as evidence of bad character which is prohibited by I.R.E. 404. It is clear from the record that defense counsel was aware of the nature of the testimony. Later in the trial, defense counsel questioned the others in the room at the time the cocaine was produced. One witness, the man who the victim's mother stated had produced the cocaine, testified that the cocaine did not come from Reynolds but that the mother had produced it herself. The second witness in the room at the time later confirmed this version.

In his brief, Reynolds makes no specific argument that this evidence was prejudicial. He simply includes the testimony in a litany of errors which he claims establishes ineffective assistance. Upon reviewing the record and the argument in this case, we conclude that as to the cocaine evidence, Reynolds failed to carry his burden of establishing prejudice. The later questioning of the those present at the time adequately defused any prejudicial effect the testimony of the victim's mother might have had. It also appears that defense counsel may have known about the testimony of the various parties in advance, and used the opportunity to attack the credibility of the victim's mother. We conclude that Reynolds has failed to establish that there is a reasonable probability that the outcome of the trial would have been different but for the conduct of counsel on this issue. We affirm the district court's denial of the post-conviction relief application as to the evidence of Reynolds supplying cocaine to a friend of the victim's mother.

### B. Evidence of Prior Incident of Sexual Abuse

■ During the course of the trial, defense counsel questioned various witnesses, including the victim, regarding allegations of a previous incident of sexual abuse. This incident was alleged to have occurred when the victim was ten years old and it appears that no one believed her at the time she came forward with the allegations.

Reynolds claims that questioning the witnesses regarding these previous allegations amounted to ineffective assistance. He asserts that the information was highly prejudicial and by questioning the witnesses, defense counsel "opened the door" for the prosecution to further explore past instances of abuse, which would have been otherwise unavailable to the prosecution.

The district court, in denying the post-conviction application, found that the questioning "involved the defense strategy to destroy the credibility of the complaining witness, which failed." During the hearing on the application, counsel that represented Reynolds at trial claimed that the evidence was being used to discredit the victim and to

show that she was making this allegation merely to get more attention from her mother. At the hearing on the application, the following exchange took place with respect to the evidence:

[BY THE PROSECUTOR]: Was that critical evidence, in your mind was that important evidence that she had made a prior false report and everyone believed it was false?

[BY REYNOLDS' FORMER COUNSEL]: Absolutely critical. That is what directed me in every move. Terry [Reynolds] and I talked on it at great lengths and we talked to his step-dad and mother at great lengths on the same thing. It is just amazing to me this allegation is being made now, literally amazing.

Q: Because it was an important point that nobody had believed [the victim] the first time?

A: That's right, including me and including everyone I talked to.

Q: Including her mother?

A: Including her mother.

As to the determination made by the district court that this was a tactical decision, albeit a failed one, we agree. Curiously, in the order denying the application, the district court concluded, however, that counsel was deficient in engaging in such a tactic. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law or other shortcomings capable of objective evaluation. *Davis v. State*, 116 Idaho 401, 406, 775 P.2d 1243, 1248 (Ct.App.1989). Likewise, in the context of a post-conviction proceeding, we will not find counsel's conduct to be deficient merely because a tactical decision yielded an unfavorable result. Instead, the tactical decision must be shown to be defective, beyond the mere fact of an unfavorable result. Therefore, we disagree with the district court as to its conclusion that using this tactic was deficient conduct by counsel. Because the district court concluded, however, that Reynolds had failed to establish sufficient prejudice, the result in

this instance does not change. Therefore, we affirm the denial of the post-conviction application as to the prior sexual abuse evidence.

### C. Evidence of Victim's Credibility

█ At trial, counsel for Reynolds allowed various witnesses to testify about whether they believed the victim was being truthful. Reynolds' counsel directly asked the victim's mother whether she believed the victim. Counsel also failed to object when the prosecution asked an adult friend of the victim whether she believed the victim, although he later objected on "foundation" grounds.

On the original application for post-conviction relief, the district court found that counsel was deficient in his performance in this area. The district court concluded, however, that the second prong of the *Strickland* test, prejudice, had not been established by Reynolds and therefore the application was denied.

Following the denial, this Court released its opinion in *State v. Allen*, 123 Idaho 880, 853 P.2d 625 (Ct.App.1993). In *Allen*, we held that counsel was deficient in allowing an expert to testify, without objection, to the credibility of the child abuse victim. We further held that the appellant had properly established that there was a reasonable probability of a different outcome at trial. In that case, as here, there was no physical evidence of the abuse, only the victim's allegations. Because credibility was of such vital importance in the trial in *Allen*, we followed the rule announced in *State v. Hester*, 114 Idaho 688, 760 P.2d 27 (1988). The rule stated that "an expert's opinion, in a proper case, is admissible up to the point where an expression of opinion would require the expert to pass upon the credibility of witnesses or the weight of disputed evidence. To venture beyond that point, however, is to usurp the jury's function." 114 Idaho at 696, 760 P.2d at 35.

After the release of *Allen*, Reynolds filed a motion for relief from judgment under I.R.C.P. 60(b)(6). This motion was based on the fact that the district court had found deficient conduct on the part of Reynolds' counsel, but had determined that there was

not a sufficient showing of prejudice. Reynolds argued in his motion for relief that the ruling in *Allen* required that prejudice be found when defense counsel allowed testimony on the issue of the victim's credibility. Reynolds seems to argue that *Allen* has created a presumption of prejudice when counsel improperly allows a witness to testify regarding another witness' credibility.

The district court, in denying the motion for relief from judgment, distinguished Reynolds' case from *Allen* and *State v. Johnson*, 119 Idaho 852, 810 P.2d 1138 (Ct.App.1991), a case upon which *Allen* heavily relied. The district court determined that the rule of *Allen* and *Johnson* applied specifically to the opinion of experts, not to lay witnesses, reasoning that:

> Unlike opinions on credibility given by supposedly detached experts, the opinions on credibility of partisan lay witnesses are usually obvious, even if not given and if given without facts to back [them] up, [and] will not be given much weight by the jury. In short, jurors can be expected to give great deference to expert opinion testimony, but very little credence to opinions of partisan lay witnesses, such as we had in this trial.

We agree with the district court's reasoning. At least with respect to the witnesses in this case, a partisan lay witnesses testimony generally implies a belief in the claims of the party for whom they are testifying. We do not believe that in this case a mother's testimony that she believes her child, or an adult friend's testimony that she believes the victim, would have any more than a marginal effect on the jury's determination of the credibility of the victim. The danger of experts testifying regarding credibility lies in the perception by the jury that the expert is a detached, neutral party who has no stake or interest in the litigation. Experts often possess special knowledge or training, giving their opinions of credibility great weight in the minds of jurors. Such weight is not afforded the lay witness who obviously sides with one party.

This position is consistent with our past opinions. In *Johnson, supra*, we held that

"Statements by a witness as to whether another witness is telling the truth are prohibited." 119 Idaho at 857, 810 P.2d at 1143. All of the cases cited for this proposition involve expert witnesses testifying regarding credibility, which was also the case in *Johnson*. We therefore conclude that our ruling in *Allen* does not require a finding of prejudice when a lay witness improperly testifies regarding the credibility of another witness. Nor do we agree with the implication that *Allen* creates a *presumption* of prejudice when a witness, either expert or lay, testifies regarding credibility.

On the other hand, our holding today does not mean that lay witnesses should be permitted to testify as to matters of credibility. Such testimony is and should be inadmissible. Nor does our holding mean that a defendant will never be able to make the requisite showing of prejudice in an ineffective assistance claim when a lay witness testifies regarding credibility. On the specific facts of this case, we merely conclude that prejudice was not adequately established by Reynolds because of the testimony of the lay witnesses as to credibility.

■ Reynolds also claims that the expert witness was questioned as to the credibility of the victim, and that his own counsel questioned the expert whether she had an opinion about the identity of the abuser. These two allegations, if true, would violate the rule set forth in *Allen*. We disagree, however, with Reynolds' underlying premise that the state directly questioned the expert whether the victim was telling the truth. Also, the question regarding the expert's opinion of the identity of the abuser was never answered. After the expert's lengthy description of the characteristics of an abused child, the following exchange took place at trial:

[BY THE PROSECUTOR]: Okay. Based on your knowledge of [the victim's] case, your investigation and your work with her and then based on your background, education, training and experience, do you have an opinion as to whether [the victim] was sexually molested?

THE COURT: Answer yes or no.

[THE WITNESS]: Yes.

[BY THE PROSECUTOR]: What is that?

THE COURT: Just a second. You may ask some questions in aid of an objection.

Do you wish to object at this time?

[BY DEFENSE COUNSEL]: Do your studies give you any help in determining who abused the child that you feel is abused?

A: My studies or my work with the child?

Q: Your qualifications, whether they are through school or experience or individual study or—

A: No.

Q: —whatever? So you don't have any opinion in this case or in any of the cases that you look at who is the abuser?

A: Yes, I do.

Q: You do have an opinion?

A: Yes.

Q: Does your qualifications help you have such an opinion?

A: My training. My training provides a background by which I assess a child's truthfulness and in that sense, yes, it reflects on that.

Q: And you are saying your training qualifies you to determine whether a child is telling the truth or not?

A: Yes, I feel it does.

[BY DEFENSE COUNSEL]: And in that case, Your Honor, I don't believe this witness can be qualified. That is the job of the jury to decide whether she is telling the truth.

The jury has spent as much time with [the victim] approximately as this lady testifies that she has seen [the victim]. It just would seem patently unfair for this defendant to have to—

[BY THE PROSECUTOR]: I'm going to object to [defense counsel] arguing his case before the jury. If there is going to be lengthy [sic] and this kind of argument is given, I ask the jury be excused.

[BY DEFENSE COUNSEL]: I won't argue that line. I object that her qualifications give her any qualifications. I don't think that there are training courses that

32

could qualify a person to give an opinion as to who the defendant is.

I think there might be those who are qualified to give an opinion as to whether a person was abused, but to give an opinion, and in this case I don't think that opinion would be appropriate anyway, but to give an opinion as to who abused the person, I don't think there is any training course available to qualify anyone to do that.

THE COURT: Well, she wasn't asked that question. The court is going to overrule the objection to the last question. She was not asked to give an opinion as to whether the child was telling the truth as to who molested the child.

. Do you want to restate the question or have it read back? .

[BY THE PROSECUTOR]: I have it written down. I can read it again.

Q: ... do you have an opinion as to whether or not [the victim] was sexually molested? Your response was yes.

My next question is, what is that opinion.

A: In my opinion she was definitely sexually abused.

[BY THE PROSECUTOR]: That's all the questions I have.

The prosecution did not ask whether the expert believed the victim was telling the truth. Such a question would have dealt directly with the victim's entire story, including the events of the incident and the identity of the perpetrator. The questions were limited strictly to whether the expert felt the child had been abused. Such a question is permissible, as the characteristics of a sexually abused child are not within the common experience or knowledge of the average juror. *See, e.g., State v. Ransom,* 124 Idaho 703, 710, 864 P.2d 149, 156 (1993).

Although the expert was asked and answered affirmatively whether she had an opinion as to the identity of the abuser, she was not asked and did not state what that opinion was. The expert witness did not name the defendant as the abuser nor indicate upon what information her opinion was based. The question, though probably un-

wise, was not enough to establish that prejudice requirement of *Strickland.*

In conclusion, having reviewed the record and testimony of the various witnesses, we agree with the district court that Reynolds has failed to satisfy the prejudice element required in *Strickland* regarding the truthfulness testimony. Therefore, as to these grounds, the denial of the application must be affirmed.

D. Cumulative Error

Reynolds also claimed in his application that the cumulative effect of all the errors at trial amounted to ineffective assistance. The district court denied the application on these grounds. We have reviewed each of the errors and the record as a whole and conclude that the district court was correct. Reynolds has again failed to make a sufficient showing of prejudice with respect to the cumulative effect of defense counsel's missteps. Therefore, as to these grounds, we also affirm the district court's denial of Reynolds' application.

**CONCLUSION**

The order of the district court denying Reynolds' application for post-conviction relief is affirmed. The district court properly denied both "summary judgment" motions and was correct in ruling that jurors should not be allowed to testify to the prejudicial effects of defense counsel's errors. The application was properly denied on its merits and the motion for relief from the judgment was also properly denied. The order of the district court is hereby affirmed.

WALTERS, C.J., and LANSING, J., concur.