51 P.3d 449

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Danny CORDOVA, Defendant–Appellant.**

No. 26705.

Court of Appeals of Idaho.

May 31, 2002.

Review Denied Aug. 8, 2002.

Order Amending Denial of Review Oct. 17, 2002.

Molly J. Huskey, Interim State Appellate Public Defender; Boise, for appellant. Molly J. Huskey argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

PERRY, Chief Judge.

Danny Cordova appeals from his judgment of conviction and sentence for lewd conduct with a minor under sixteen. Cordova also appeals the denial of his I.C.R. 35 motion. We affirm.

### I.

### BACKGROUND

During an interview at the Children at Risk Evaluation Services (CARES) Program, Cordova's niece revealed that Cordova had sexually abused her. The disclosure was reported to law enforcement, and an officer approached Cordova at his home and requested an interview. The interview was scheduled for the next day. Cordova called the officer and requested transportation to the interview. The officer agreed and drove Cordova to the police station.

At the beginning of the interview Cordova was advised of his *Miranda*[1] rights and signed a waiver form. Three officers questioned Cordova at different times, with the interview lasting approximately one and one-half hours. Cordova admitted to sexually touching his niece and masturbating and ejaculating in front of her. The interview was videotaped. At the conclusion of the interview, an officer drove Cordova home.

Approximately one month later, a grand jury indicted Cordova on one count of lewd conduct with a minor under sixteen. I.C. § 18–1508. Cordova filed a motion to suppress his confession, arguing that the interviewing officers engaged in coercive conduct that overbore his will and rendered his confession involuntary. The district court denied the motion, concluding that under the totality of the circumstances surrounding the interview, Cordova's statements were made voluntarily and were not the product of police conduct. Cordova also filed a motion in limine to preclude the playing of the videotape at trial on the grounds that the interviewing officers: (1) improperly vouched for the credibility of the victim; (2) injected their own theory of the case and evidence into the interview; and (3) discussed Cordova's prior criminal and psychological history. The district court denied Cordova's motion to exclude the videotape from trial, but ordered the state to redact those portions of the videotape discussing Cordova's prior criminal and psychological history.

A jury trial was held, and Cordova requested a jury instruction stating that the officers' interrogation techniques were not relevant to any issues in the case and was not to be considered by the jury for any purpose other than as interrogation techniques. The

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

district court declined to give the instruction, concluding that it could be covered in closing argument, was already covered by another instruction, and would be an improper comment on the evidence. The jury found Cordova guilty. Thereafter, the district court held a hearing on the sentencing enhancement and found that the requirements of the enhancement were met. The district court entered a judgment of conviction and sentenced Cordova to a unified term of twenty-five years, with a minimum period of confinement of ten years. Cordova filed a Rule 35 motion, supported by documentation. The district court denied the motion. Cordova appeals.

## II.

## ANALYSIS

### A. Motion to Suppress

■ Cordova argues that the district court erred when it denied his motion to suppress, asserting that the interviewing officers use of leading questions and their exercise of undue pressure caused Cordova to give an involuntary confession. Cordova does not contend that he was in custody at the time the interview took place.

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

■ The United States Supreme Court has recognized that a noncustodial interrogation might in some situations, by virtue of some special circumstance, be characterized as one where a defendant's confession was not given voluntarily. *See Beckwith v. United States,* 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1, 8–9 (1976); *see also*

*State v. Troy,* 124 Idaho 211, 214, 858 P.2d 750, 753 (Ct.App.1993). In order to find a violation of a defendant's due process rights by virtue of an involuntary confession, coercive police conduct is necessary. *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 484 (1986); *State v. Whiteley,* 124 Idaho 261, 268, 858 P.2d 800, 807 (Ct.App.1993). The state must show by a preponderance of the evidence that the defendant's statements were voluntary. *Whiteley,* 124 Idaho at 268, 858 P.2d at 807.

■ The proper inquiry is to look to the totality of the circumstances and then ask whether the defendant's will was overborne by the police conduct. *Arizona v. Fulminante,* 499 U.S. 279, 287, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302, 316 (1991); *Troy,* 124 Idaho at 214, 858 P.2d at 753. In determining the voluntariness of a confession, a court must look to the characteristics of the accused and the details of the interrogation, including: (1) whether *Miranda* warnings were given; (2) the youth of the accused; (3) the accused's level of education or low intelligence; (4) the length of the detention; (5) the repeated and prolonged nature of the questioning; and (6) deprivation of food or sleep. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973); *Troy,* 124 Idaho at 214, 858 P.2d at 753.

Cordova does not dispute the district court's factual findings. Rather, he contends that the district court erred in concluding that the police conduct was not coercive and did not overbear his will. Specifically, Cordova cites statements by the interviewing officers' to the effect that one was an expert in detecting deception, that the officers knew what had happened and that they knew Cordova was lying, and that the officers believed the victim. Cordova alleges that the police badgered him, used extremely leading questions, and placed undue pressure on him. Cordova asserts that such conduct was coercive and overbore his free will.

The district court found that Cordova was transported to and from the interview by officers at Cordova's request, was never handcuffed, and was told by officers that he was not under arrest and was free to leave at any time. In addition, an officer read Cordo-

va his *Miranda* rights, and Cordova signed a written form stating that he understood and waived those rights. Cordova was forty-one years old at the time of the interview. At oral argument on appeal, counsel for Cordova contended that Cordova is uneducated and has a history of mental illness, but there was no evidence of this presented at the suppression hearing before the district court. Nothing in the record indicates that Cordova was deprived of food or sleep during the interview. The interview lasted one hour and twenty-four minutes, and the interviewing officers never made specific promises to Cordova in exchange for his statements. Halfway through the interview, Cordova was left alone while an officer went to get Cordova a glass of water. The officer returned with the water several minutes later and left a second time for almost seven minutes before returning with another officer. The new officer entered the interview room and again informed Cordova that he was not under arrest and was free to leave. The new officer conducted the rest of the interview. At the conclusion of the interview, the officer shook Cordova's hand and gave Cordova his business card, telling Cordova to call the officer if Cordova needed anything.

Upon our review of the record, we conclude that the officers' techniques in this case were not coercive and did not overbear Cordova's will or render his confession involuntary. Accordingly, the district court did not err in denying Cordova's motion to suppress.

## B. Motion in Limine

 Cordova next argues that the district court abused its discretion when it denied his motion in limine to redact portions of the videotaped confession that was played for the jury. Cordova contends that portions of the videotape should have been redacted because they showed an officer stating that he was an expert in deception detection and that he knew the victim was telling the truth. Cordova asserts that the statements are the equivalent of admitting an expert witness's testimony regarding the credibility of the victim, in violation of the rule that an expert witness is not permitted to testify regarding the truth or falsity of a victim's claims. *See State v. Allen*, 123 Idaho 880, 884–85, 853 P.2d 625, 629–30 (Ct.App.1993). When a tri-

al court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

In the videotaped confession, Cordova is questioned by two officers, given a break while one of the officers obtains a glass of water for Cordova, and then questioned by a different officer. During the first phase of the interrogation, the officers repeatedly ask Cordova why the victim would lie and indicate numerous times that they believe Cordova is not being truthful with them. During the second phase of the interview, the new officer tells Cordova that he has gone to school for many years to learn how to detect lies, that he is an expert in deception detection and that, therefore, he knows Cordova is lying.

The district court held that the statements at issue were necessary to give context to Cordova's statements and that their admission would not be unfair because Cordova's counsel could call the officer to examine his qualifications. The district court also concluded that instructions to the jury, not to give greater or lesser weight to a witness's testimony because of who the witness is, would be enough to prevent any possible misuse of the statements by jurors.

This Court has previously held that an expert witness is not permitted to testify regarding the truth or falsity of a victim's claims. *See Allen*, 123 Idaho at 884–85, 853 P.2d at 629–30; *State v. Johnson*, 119 Idaho 852, 857, 810 P.2d 1138, 1143 (Ct.App.1991). In *Allen*, a child psychiatrist with experience dealing with child victims of sexual abuse testified that he had interviewed the victim and believed the victim was sexually abused. In *Johnson*, a doctor who was not a psychiatric expert and did not have experience dealing with child victims of sexual abuse testified that he believed the victims had been sexually abused. In both *Allen* and *Johnson*,

the respective defendants denied their involvement in the crime. The expert testimony admitted in *Allen* and *Johnson* led this Court to reverse both convictions for a new trial. *Allen* was reversed on the basis that an expert is not permitted to testify regarding the credibility of the victim. In *Johnson*, this Court concluded that the doctor who testified was not qualified as an expert on the behavior of sexually abused children and that his lay opinion testimony regarding the credibility of the victims was impermissible.

This Court has also held that there is a difference in the prejudice suffered by a defendant when an expert witness testifies regarding the credibility of the victim versus when a lay witness gives the same opinion. *See Reynolds v. State*, 126 Idaho 24, 30–31, 878 P.2d 198, 204–05 (Ct.App.1994). In *Reynolds*, this Court stated that although such lay witness testimony is improper and should always be ruled inadmissible, the admission of such testimony is not presumptively prejudicial to the defendant.

Courts in other jurisdictions have struggled with the issue of whether credibility statements made by interrogating officers in the course of a videotaped interrogation should be played for the jury. The state directs us to a plurality opinion of the Washington Supreme Court affirming the conviction of a man for robbery and kidnapping, *State v. Demery*, 144 Wash.2d 753, 30 P.3d 1278, 1285 (2001). On appeal, the court confronted the issue of whether officers' statements during a videotaped interrogation accusing the defendant of lying were admissible at trial.

During the interrogation, officers asked Demery whether he intended to stick to his version of events and Demery replied that he did because he was telling the truth. Officers then asked Demery whether the officers had treated him well during the interrogation. Demery replied that they had, but that the officers were looking at Demery like he was lying. The officers stated that they were looking at Demery like that because he was lying. The statements were not redacted from the videotape that was played for the jury. On appeal, Demery asserted the officers' statements constituted inadmissible lay opinion testimony regarding his credibility. Four justices of the Wash-

ington court disagreed, concluding that because the officers' statements were not made under oath at trial, they did not constitute testimony. Rather, the four-justice plurality explained that the statements were a common interview technique employed to see if Demery would change his story. The court also observed that the trial court's purpose in admitting the statements was to provide context for Demery's responses and not to impeach his credibility.

We note, however, that five justices of the Washington court concluded that it was error to admit the statement. Those five justices agreed that the officers' statements constituted impermissible opinion testimony. Although the majority agreed that the statements were inadmissible, four justices believed the error was reversible, while one believed it was harmless. It was this split among the majority that led to the ultimate order affirming Demery's conviction.

The Ninth Circuit Court of Appeals has also examined whether an interrogating officer's comments containing statements of disbelief at the defendant's story, opinions concerning the defendant's guilt, and references to the defendant's involvement in the crime were admissible at trial. *See Dubria v. Smith*, 224 F.3d 995, 1003 (9th Cir.2000). Dubria raised this claim in the context of a habeas corpus proceeding, which required him to prove that the admission of the videotaped testimony violated his right to due process under the United States Constitution. The court first observed that the videotape played at trial portrayed an "unremarkable interview" because the officers' comments suggested nothing more than what the state sought to prove at trial. The court agreed that there was nothing particularly damning in the officers' statements. It also noted that the officer's comments were admitted to place Dubria's answers in context. Finally, the court noted that any error in the admission of the statements was cured by the trial court's limiting instruction, directing the jury not to assume that the officer's statements during the interrogation were true. Although the court determined that the admission of the videotaped statements did not violate Dubria's right to due process, it did not decide whether the admission of the statements violated the rules of evidence.

However, another appellate court has held that interrogating officers' comments accusing the defendant, either directly of indirectly, of lying were properly excluded from the jury. *See Commonwealth v. Kitchen*, 1999 PA Super 100, 730 A.2d 513, 521–22 (1999). In *Kitchen*, the videotape depicted the interrogating officers telling the defendant, "You're lying" and "We know that you're lying." The court held that such statements were akin to a prosecutor offering his or her opinion of the truth or falsity of the evidence presented by a criminal defendant or a prosecutor offering his or her opinion regarding the guilt or innocence of the defendant, either of which would be inadmissible at trial.

After reviewing the record in this case, we conclude that the second officer's comments that he is an expert in deception detection are distinguishable from those in *Demery* and *Dubria* and more similar to those in *Kitchen*. The interrogating officer in this case interrupted his questioning to explain to Cordova that he had many years of training to learn how to detect lies and when someone is being deceptive. The officer went so far as to tell Cordova that he was an "expert" in "detecting deception" during the interrogation. These statements were given further credibility at trial when the first officer was called to testify and told the jury that he asked the second officer to continue with the interrogation because the second officer had more training in interrogation techniques. As opposed to the "unremarkable interview" observed in *Dubria*, the second officer's comments regarding his training and experience gave him the same aura of superior knowledge that accompanies expert witnesses in other trials. Accordingly, the second officer's assertions that Cordova was not being truthful appeared to be the comments of an expert, rather than the comments of a lay person investigating a crime. Although we agree with the court in *Demery*, that the tactics employed in Cordova's interrogation are acceptable interrogation tactics, we do not agree that certain comments, which may be permissible for purposes of interrogating a defendant, are also admissible in court for consideration by the jury.

We also conclude that the second officer's comments that he is an expert in deception detection are not necessary to give context to Cordova's answers. The officer's comments regarding his expertise are not connected to a question, but instead made as a statement to Cordova. Those comments could have been easily redacted without harming the context of Cordova's later admissions.

We do conclude that the officers' comments made during both interrogations indicating that they believed Cordova was lying were admissible for the purpose of providing context to Cordova's inculpatory answers. However, that is not to say that comments imputing the suspect's truthfulness are always admissible. A suspect's answers to police questioning are only admissible to the extent that they are relevant. *See* I.R.E. 402. Thus, an interrogator's comments that he or she believes the suspect is lying are only admissible to the extent that they provide context to a relevant answer by the suspect. Otherwise, interrogator comments that result in an irrelevant answer should be redacted. The officers' statements in this case that they believed Cordova was lying were admissible because the comments gave context to Cordova's inculpatory statements, which were relevant to the proceedings.

After the district court ruled that the officers' comments would be admissible at trial, Cordova requested that the district court give a limiting jury instruction at the time the videotape was played for the jury. The district court denied the request. Idaho Rule of Evidence 105 states that a court shall give, upon request, a limiting instruction restricting evidence that is admissible for one purpose but not admissible for another purpose to its proper scope. The officers' comments that Cordova was lying were admissible for the purpose of giving context to Cordova's answers, but inadmissible for the purpose of proving the truth of the matter asserted—in this case, Cordova's truthfulness. Therefore, under Rule 105, the district court erred when it failed to give a limiting instruction. Under similar circumstances, other courts have also concluded that it is proper for the trial court, upon request, to give a limiting instruction informing the jury that the police questioning they are about to observe is relevant only for the limited purpose of providing context to the defendant's answers and should not be con-

sidered for the truth of the officers' statements made therein. *See Dubria,* 224 F.3d at 1002; *Demery,* 30 P.3d at 1283.

Having concluded that the second officer's comments that he is an expert in deception detection were improperly admitted and that it was error for the district court to admit other officer comments without a limiting instruction, we must now consider whether the admission of those comments amounted to harmless error. Any error or irregularity in the admission of evidence which does not affect the defendant's substantial rights must be disregarded. I.C.R. 52. To determine whether the error affected the defendant's rights or was harmless, an appellate court asks whether it appears, beyond a reasonable doubt, that there was no reasonable possibility that the error contributed to the conviction. *State v. Eytchison,* 136 Idaho 210, 214, 30 P.3d 988, 992 (Ct.App.2001). In this case, Cordova presented no defense witnesses or other evidence at trial to rebut the charge and had voluntarily confessed to officers that he engaged in improper sexual touching of the victim. The victim also testified at trial that Cordova had engaged in improper sexual touching. Therefore, we conclude, beyond a reasonable doubt, that even absent the second officer's comments and absent the limiting instruction the jury still would have found Cordova guilty.

## C. Sentence Review

Cordova contends the district court abused its discretion in sentencing when it failed to take into account Cordova's history of mental illness and his potential for rehabilitation. Our appellate standard of review and the factors to be considered when evaluating the reasonableness of a sentence are well established. *State v. Burdett,* 134 Idaho 271, 1 P.3d 299 (Ct.App.2000); *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989); *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982); *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). Upon our review of the record, we conclude that the district court did not abuse its discretion in this case.

## D. Denial of Rule 35

Finally, Cordova argues the district court abused its discretion in denying his Rule 35. In support of the motion Cordova submitted an affidavit from his attorney stating that Cordova would not be eligible for sex offender treatment until released from prison, a letter from Cordova expressing his remorse, several prison records, and a letter from a family friend asking for leniency.

Initially, we note that an order denying a motion for reduction of a sentence under Rule 35 is reviewed for an abuse of discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established. *See State v. Hernandez,* 121 Idaho 114, 822 P.2d 1011 (Ct.App.1991); *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App. 1984); *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). If the sentence is found to be reasonable at the time of pronouncement, the defendant must then show that it is excessive in view of the additional information presented with the motion for reduction. *Hernandez,* 121 Idaho at 117, 822 P.2d at 1014.

In this case, the district court issued a written opinion denying the Rule 35 motion. In denying the motion the district court considered the additional information presented by Cordova and determined that, for the protection of society, it was necessary to deny the motion because Cordova presented a high risk to re-offend. In light of the record in this case, the district court did not err in denying Cordova's Rule 35 motion.

## III.

## CONCLUSION

Cordova's confession to police was not rendered involuntary by the officers' interview techniques. Therefore, the district court did not abuse its discretion in denying Cordova's motion to suppress. Comments made by one of the interviewing officers that he was an expert in detecting deception constituted improper expert credibility testimony and, accordingly, those portions of the videotape should have been redacted. The district court erred when it denied Cordova's request to give a limiting instruction regarding the officers' statements on the videotape. Although the district court erred in failing to edit those portions of the videotaped confession and erred in failing to give a limiting

instruction, those failures constituted harmless error. Finally, the district court did not abuse its discretion in sentencing Cordova or in denying his Rule 35 motion. Cordova's judgment of conviction and sentence and the district court's order denying the Rule 35 motion are affirmed.

Judge LANSING and Judge GUTIERREZ concur.

## AMENDED ORDER DENYING PETITION FOR REVIEW
### Oct. 17, 2002.

The Appellant filed a PETITION FOR REVIEW on June 13, 2002 and a supporting BRIEF on July 11, 2002, seeking review of the Opinion of the Court of Appeals filed May 31, 2002. The Court discussed the portion of the opinion which seems to indicate that the fact that the defendant did not testify or present any evidence can be used in determining whether there was harmless error. The Court agreed to deny the Petition for Review in an Order, to accompany the Court of Appeals decision, stating the denial of the petition should not be read to agree that harmless error can be based on the defendant's failure to present evidence. There is no burden on the defendant to testify or present evidence. In this case, however, the defendant's voluntary confession together with the victim's testimony support the Court of Appeals determination of harmless error. Therefore, after due consideration,

IT IS HEREBY ORDERED that Appellant's PETITION FOR REVIEW be, and hereby is, DENIED.