800 P.2d 138

STATE of Idaho, Plaintiff–Respondent,

v.

Benito MUNOZ aka Benny Munoz, Defendant–Appellant.

No. 17660.

Court of Appeals of Idaho.

Oct. 30, 1990.

Benito Munoz, Boise, pro se.

Jim Jones, Atty. Gen., Michael J. Kane, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

A jury returned a verdict finding Benito Munoz guilty of first degree burglary, I.C. §§ 18–1401, –1402, and –1404. Following the verdict, Munoz filed a motion for judgment of acquittal. I.C.R. 29(c). The district court denied Munoz' motion and entered a judgment of conviction based on the jury verdict. We affirm.

The facts are as follows. At 2:00 a.m. on Sunday, February 28, 1988, Deputy Robert Nay of the Cassia County Sheriff's Department responded to a silent burglar alarm at Pettingill's Auto Parts Store in Burley, Idaho. While driving around the store's perimeter, Deputy Nay observed a broken window leading into Pettingill's shop area from the alleyway where his vehicle was located. Deputy Nay reversed his automobile to gain a vantage point of both the window and a side door leading into the premises. Deputy Nay's view of the window was obscured by the outbuilding attached to the shop. However, he was in a position to see anyone who entered the alleyway from the vicinity of the window. Deputy Nay called for backup. While waiting for assistance, Deputy Nay observed a man with something in his hand step from around the side of the outbuilding which was blocking his view of the broken window. The man walked towards Deputy Nay's vehicle, observed the vehicle, turned around, and began walking quickly the other way. Deputy Nay alerted his colleagues in the vicinity that a suspect was fleeing on foot. The suspect fled to the front of Pettingill's and ran directly into another deputy's vehicle. The suspect was apprehended and was identified as the defendant, Munoz.

Approximately three minutes later Deputy Nay returned to the broken window for further investigation. Outside the window, Deputy Nay discovered a burlap sack containing numerous pieces of automobile repair equipment. Deputy Nay later testified that the sack was not there when he first observed the window. Deputy Nay entered the shop through the broken window where he found another burlap sack inside the building. Deputy Nay found no one else inside the store.

At trial, Munoz took the stand in his own defense. Munoz claimed that he had been with his wife watching movies at his moth-

er's house for most of the day. Munoz stated that he and his wife argued over what time to leave for their home in Heyburn. At 2:00 a.m., Munoz became angry with his wife and left his mother's house and proceeded on foot towards Heyburn. Munoz maintained that when he reached the area of Pettingill's he observed a vehicle similar to his wife's and assumed that she was searching for him. Munoz testified that he turned around to return to his mother's house and entered the alleyway adjacent to Pettingill's. Munoz testified that it was at this time Deputy Nay observed him. Munoz stated that he fled the area because he believed that he was in an area he should not be due to the presence of the police car. Neither Munoz' wife nor his mother testified at trial. The guilty verdict indicates that the jury chose not to believe Munoz' testimony. The district court denied his motion for acquittal. This appeal followed.

■ An appellate court will not set aside a judgment of conviction entered upon a jury verdict if there is substantial evidence to support the verdict. On appeal, where the defendant stands convicted, we review the evidence in a light most favorable to the prosecution. *State v. Fenley,* 103 Idaho 199, 646 P.2d 441 (Ct.App.1982). The same standards apply when we review the district court's decision to grant or deny the defendant's motion for judgment of acquittal. *State v. Holder,* 100 Idaho 129, 594 P.2d 639 (1979); *State v. Elisondo,* 103 Idaho 69, 644 P.2d 992 (Ct.App. 1982); *State v. O'Campo,* 103 Idaho 62, 644 P.2d 985 (Ct.App.1982); *State v. Mata,* 107 Idaho 863, 693 P.2d 1065 (Ct.App.1984). Moreover, when we review the record to determine whether substantial evidence exists, we are precluded from substituting our judgment for that of the jury as to the credibility of witnesses, the weight of the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). The mere possibility of innocence will not invalidate a guilty verdict on appeal. *State v. Fenley, supra.*

■ Munoz argues that the jury verdict is erroneous because the jurors failed to consider that Deputy Nay's view of the broken window was obscured by an outbuilding protruding from the back of Pettingill's. Munoz maintains that the presence of the outbuilding precluded Nay from directly observing anyone entering or exiting the building through the broken window. Thus, Munoz argues that the state failed in its burden of proving the essential element that he entered the building. We are unpersuaded. The jury had available to them a series of photographs showing what the crime scene looked like and the vantage point from which Deputy Nay observed Munoz. Based on the testimony of Deputy Nay and the photographs, a jury could infer that Munoz exited through the broken window. Furthermore, the burlap sack containing the auto repair tools was found outside the window after the officers apprehended Munoz. The sack was not present when Deputy Nay first examined the perimeter. Based on this evidence, a jury could conclude beyond a reasonable doubt that Munoz had entered the building to steal the tools.

■ Munoz next argues that the jury failed to consider the testimony of the officers describing Munoz as "clean" when he was first apprehended. At trial, Munoz showed that the burlap sack contained loose fibers and that a person handling the sack would cause such fibers to cling to his or her clothing. Munoz also demonstrated that the tools taken were dirty and oily and that anyone handling those tools would get dirt and oil on his or her hands. Again, we are unpersuaded. The jury could have concluded that when Munoz ran from Deputy Nay his movements removed any fibers from his clothing. The jury could have concluded that Munoz covered his hands during the burglary or wiped them off as he left the premises. Moreover, the police officers' recollection was unclear whether Munoz had an absence of fibers or dirt and oil because Munoz was not specifically examined for those characteristics. From these circumstances, the jury could infer that a determination whether Munoz was "clean" would not necessarily lead to the

conclusion that Munoz did not commit the crime charged. In any event, the weight to be given the officers' description of whether Munoz was "clean" is a matter solely within the province of the jury. *State v. Campbell, supra.*

Munoz also maintains that the jury failed to consider that the police did not find any fingerprints on the tools or at the crime scene. However, the prosecution called an expert witness who testified that, in his opinion, fingerprints would not be found on the tools because of their dirty condition. This opinion was corroborated by a detective who testified that he "dusted" the tools for fingerprints but found none that he could identify. Moreover, the police testified that they did not otherwise examine Pettingill's shop area for fingerprints because, in their opinion, it was unlikely that they would find any fingerprints. Fingerprints, by their very nature, are probative only of the existence of someone; their absence does not demonstratively show the absence of that individual. *State v. Bernhardt,* 20 Wash.App. 244, 579 P.2d 1344 (1978); *see e.g. State v. Edwards,* 109 Idaho 501, 708 P.2d 906 (Ct.App.1985). Here, evidence explaining the absence of fingerprints was submitted to the jury.[1] Accordingly, the record contains substantial evidence upon which the jury could find Munoz guilty of first degree burglary.

Munoz also alludes to an issue raising concerns of sufficient consequence to warrant comment. In his brief, Munoz claims that he lacked sufficient command of the English language to fully understand the proceedings. This assertion belies the evidence in the record. At the beginning of his testimony Munoz was informed that a translator would be made available should he fail to understand any of the questions asked him. Munoz indicated that he understood English well enough, and that if he did not understand the question posed to him, he would alert the court. Later, the court interrupted Mu-

noz' testimony *sua sponte,* and the following colloquy took place:

THE COURT: Have you had any trouble so far understanding the questions of your attorney in English and your response back in English?

ANSWER: No.

THE COURT: Have you been clearly able to understand his questions?

ANSWER: Yes.

THE COURT: And you feel like you have been able to adequately give your answers in English even though that is not your primary language?

ANSWER: Yes.

THE COURT: If at any time you do not clearly understand the question of your attorney or later Mr. Smyser, [the prosecutor], will you turn to me and tell me that so I can have them repeat it so I can make sure that you are clearly understand [sic] all of the questions and proceeding in English?

ANSWER: Yes.

Here, it is important to consider that Munoz spoke English and also had prior encounters with our legal system. *See State v. Carrasco,* 117 Idaho 295, 787 P.2d 281 (1990). Based on this information and the lack of any factual basis in the record for Munoz' assertions, we conclude that Munoz sufficiently understood the proceedings.

Finally, we note that Munoz raises a series of arguments regarding the effective assistance of his trial counsel. To the extent that the issue of ineffective assistance of counsel is raised by these assertions, we conclude that the record is insufficient to make a determination at the appellate level. Any further development of this issue should be pursued on a petition for post-conviction relief. *State v. Darbin,* 109 Idaho 516, 708 P.2d 921 (Ct.App.1985). Should Munoz decide to file a petition for post-con-

---

1. Interestingly, an officer testified that when Munoz was arrested at the scene, he asked if the officers had found any fingerprints, commenting that if they had not found any fingerprints, "they couldn't do nothing." Arguably, this statement indicated an awareness of the likelihood the officers would not find any fingerprints on the tools or in the shop. Later, during his testimony, Munoz denied having made the statement to the officer.

viction relief, the issue of ineffective assistance of counsel is preserved without prejudice, avoiding preclusion on the basis of res judicata. *Id.*

We conclude that there is sufficient evidence to uphold the jury verdict of guilty for the crime of first degree burglary. The judgment of conviction and the order denying Munoz' motion for a judgment of acquittal are affirmed.

SILAK and SWANSTROM, JJ., concur.