936 P.2d 210

STATE of Idaho, Plaintiff–Respondent,

v.

Raul ASPEYTIA, Defendant–Appellant.

No. 21938.

Court of Appeals of Idaho.

Feb. 27, 1997.

Petition for Review Denied, May 8, 1997.

John A. Olson, Twin Falls County Public Defender, Twin Falls, for defendant–appellant.

Alan G. Lance, Attorney General; L. LaMont Anderson, Deputy Attorney General (argued), Boise, for plaintiff–respondent.

LANSING, Judge.

Raul Aspeytia is appealing from his judgment of conviction and sentence entered after a jury found him guilty of lewd conduct with a minor child under sixteen in violation of I.C. § 18–1508. After considering Aspeytia's claims of error, we affirm.

## I.

### FACTS

The events leading to Aspeytia's prosecution began in 1993 when his six-year-old stepdaughter, J.M., disclosed that Aspeytia had touched her in a sexual manner. J.M. testified at trial that while she was at home alone with Aspeytia, he removed her clothing and touched her with his penis in her mouth, between her legs and in her buttocks. J.M. also reported that Aspeytia showed her a sexually explicit movie. Later that same evening, J.M. disclosed these events to her

brothers, and one of the brothers informed J.M.'s mother the next day.

The day after the alleged molestation J.M. was examined by Dr. Kevin Kraal, an emergency room physician. The following day an examination was also conducted by Dr. Barton Adrian, a pediatrician. Both physicians testified at trial that, based upon their physical examinations and interviews of J.M., they were of the opinion that she had been sexually molested.

On appeal, Aspeytia asserts that the conviction should be vacated because the evidence against him is insufficient to support the jury's verdict, because there were errors in the admission of testimony of physicians who examined the victim and errors in the sentencing proceeding, and because he received ineffective assistance of counsel.

## II.

## ANALYSIS

### A. Physicians' Testimony

Aspeytia first contends that the trial court erred in allowing the testimony of Dr. Kraal and Dr. Adrian that, in their opinions, J.M. had been sexually molested. Aspeytia contends that Dr. Kraal was unqualified to make such an assessment and that, as to both physicians, their opinions were not based upon physical evidence and therefore amounted to nothing more than an impermissible vouching for the credibility of the victim.

Aspeytia's counsel did not object to this testimony at trial. The State therefore argues that the absence of any objection to the

evidence in the trial court precludes consideration of this issue on appeal. However, Aspeytia contends that this Court may review admission of the testimony for "fundamental error" as the Court did under similar circumstances in *State v. Johnson,* 119 Idaho 852, 810 P.2d 1138 (Ct.App.1991), and as authorized by I.R.E. 103(d).[1] Fundamental error has been defined as such error as goes to the foundation or basis of a defendant's rights or goes to the foundation of the case or takes from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. *State v. McAway,* 127 Idaho 54, 60, 896 P.2d 962, 968 (1995); *State v. Sarabia,* 125 Idaho 815, 818, 875 P.2d 227, 230 (1994).

It must be acknowledged that there is a lack of clarity in the case law of this state as to whether the admission of evidence without objection at trial may ever be reviewed for fundamental error on appeal. *Compare State v. Walters,* 120 Idaho 46, 59, 813 P.2d 857, 870 (1991) (Boyle, J., concurring)[2] (holding that admission, without objection, of fire investigator's opinion, that the defendant was the person who started the fire was fundamental error); *and Johnson, supra,* (holding that physician's opinion, elicited without objection, that the victim had been sexually molested was fundamental error requiring reversal of the conviction), *with McAway,* 127 Idaho at 60–61, 896 P.2d at 968–69 (refusing to consider challenge to the admissibility of a videotape that was raised for the first time on appeal, the Court stating that an abuse of discretion in admitting evidence is a trial error and "does not go to the foundation of the case or take from the defendant a right which was essential to his defense");

---

**1.** Idaho Rule of Evidence 103(d) provides in pertinent part:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
. . . .
(d) Errors affecting substantial rights. Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.

**2.** In *Walters,* the Supreme Court issued an initial decision in which only two Supreme Court justices and one justice pro tem participated. The Court then granted rehearing and issued new opinions. Following the rehearing Justice Bistline authored a new "opinion of the Court" in which only Judge Bail, pro tem, joined. Judge Boyle's "concurring opinion" was joined by Justice Bistline and Justice Johnson. Hence, this "concurrence" was actually the majority opinion in *Walters* following rehearing.

*State v. Higgins,* 122 Idaho 590, 596, 836 P.2d 536, 542 (1992) (declining to consider an issue not presented to the trial court concerning expert testimony about the profile of a sex offender because "any error in admitting the testimony was not fundamental error, because it dealt with the admission of evidence and did not go to the foundation of the case or take from Higgins a right that was essential to his defense."); *and State v. Bingham,* 116 Idaho 415, 423, 776 P.2d 424, 432 (1989) (holding that error in admitting expert opinion would not constitute fundamental error). However, in this case it is unnecessary that we determine whether the fundamental error doctrine may be applied to evidentiary issues, for we must, in any event, consider the admissibility of the testimony of Dr. Kraal and Dr. Adrian pursuant to another issue raised by Aspeytia on appeal, his claim of ineffective assistance of counsel.

Aspeytia argues that his attorney's failure to object to this testimony during trial constitutes ineffective assistance of counsel and requires that Aspeytia be afforded a new trial. We generally decline to consider claims of ineffective assistance of counsel on a direct appeal because they are more appropriately brought through a post-conviction relief action where an evidentiary record pertinent to the claims can be developed. *See State v. Mitchell,* 124 Idaho 374, 376, 859 P.2d 972, 974 (Ct.App.1993); *State v. Munoz,* 118 Idaho 742, 745–46, 800 P.2d 138, 141–42 (Ct.App.1990); *State v. Darbin,* 109 Idaho 516, 523, 708 P.2d 921, 928 (Ct.App.1985). However, because Aspeytia's claim of ineffective assistance is based on counsel's omission to make objections during the trial, the transcript of the trial itself provides a sufficient record to permit our review, and we will therefore consider the claim. *See State v. Pugsley,* 128 Idaho 168, 174, 911 P.2d 761, 767 (Ct.App.1995); *State v. Frederick,* 126 Idaho 286, 289, 882 P.2d 453, 456 (Ct.App. 1994).

To prevail on a claim of ineffective assistance of counsel the appellant must show that counsel's representation was deficient and that the deficiency was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Roles,*

122 Idaho 138, 144, 832 P.2d 311, 317 (Ct. App.1992). To establish a deficiency, the applicant must demonstrate that the attorney's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65; *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). In order to show prejudice, the defendant must establish that there is a reasonable probability that, absent counsel's unprofessional errors, the outcome of the trial would have been different. *Id.* at 761, 760 P.2d at 1177. This test is met if the deficient conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Ivey v. State,* 123 Idaho 77, 80, 844 P.2d 706, 709 (1992).

Effective legal representation does not require that an attorney object to admissible evidence. *Higgins,* 122 Idaho at 602, 836 P.2d at 548. If an objection would not have been successful, its absence will not constitute ineffective assistance of counsel. *Pugsley, supra; State v. Fee,* 124 Idaho 170, 176, 857 P.2d 649, 655 (Ct.App.1993). Consequently, to resolve Aspeytia's claim of deficient performance by his attorney, we must examine whether objections to the testimony of Dr. Kraal and Dr. Adrian, if made by Aspeytia's attorney, properly would have been sustained.

**1. Dr. Kraal Was Qualified as an Expert Witness**

 Aspeytia asserts that Dr. Kraal lacked the requisite expertise to present his observations of J.M.'s physical condition and was not qualified to render an opinion as to the significance and meaning of the physical findings. According to Aspeytia, his attorney's failure to object to Dr. Kraal's qualifications as an expert prevented Aspeytia from receiving a fair trial.

The admissibility of Dr. Kraal's testimony is governed by I.R.E. 702, which provides in relevant part:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training, or education, may testify thereto in the form of an opinion or otherwise. Foundational testimony regarding Dr. Kraal's training and experience demonstrates that he met the criteria of this rule to provide expert medical testimony. Dr. Kraal is a family practitioner and emergency room physician who first examined J.M. following her report of having been sexually abused. Dr. Kraal was not shown to have specialized training or expertise in the area of child sexual abuse. However, in laying a foundation to qualify Dr. Kraal as an expert witness, the prosecutor established that Dr. Kraal had been licensed to practice medicine for twelve years, had practiced family medicine for five years and for a period of four and one-half years preceding the trial had been an emergency room physician. In the course of his emergency room practice, Dr. Kraal had come into contact with ten to twelve children alleging sexual abuse and had also encountered an unspecified number of cases of child sexual abuse in his practice of family medicine.

Dr. Kraal testified that during the vaginal examination of J.M. he observed small tears of the mucosa that were evidence "of an attempted penetration by some object." He stated that "not really much else that can do that." Dr. Kraal also observed other irritations and injuries to the genital and anal areas that could be caused by either sexual abuse or other conditions common to children of J.M.'s age. Dr. Kraal's medical training and experience as an emergency room physician and family practitioner qualified him to report his visual observations of J.M.'s physical condition and the possible causes of observed injuries. An objection to Dr. Kraal's qualification as an expert in this case would have been properly overruled. It follows that the absence of such an objection by Aspeytia's attorney was neither a deficiency in performance nor a cause of prejudice to Aspeytia.

## 2. Dr. Kraal and Dr. Adrian Did Not Impermissibly Vouch for the Complaining Witness' Credibility

Aspeytia next complains that his lawyer should have objected to Dr. Kraal's and Dr. Adrian's testimony that in their opinion the victim had been sexually abused. Aspeytia argues that no sufficient medical basis for these opinions was shown and that the physicians therefore were merely assuming the veracity of the victim's report and vouching for her credibility.

Aspeytia's argument rests upon the premise that the physical findings from the physicians' medical examinations of the victim were "neutral," i.e., that J.M.'s observed injuries were consistent with common childhood conditions as well as sexual abuse. The record does not support this premise. Although Dr. Adrian testified that some of his findings of redness and irritation could be caused by common irritants such as bubble bath or poor hygiene, and that the observed anal tears could be caused by constipation, both doctors reported physical findings that, in their opinion, could be attributed only to sexual molestation. Dr. Kraal testified to his observation of red, swollen and irritated labia minora, small tears of the mucosa and a reddened vaginal vault. With respect to his findings on the vaginal examination, he stated, there was "not much" except a penetration by some object that could cause such conditions. Dr. Adrian examined J.M., using a colposcope. He observed an internal abrasion by the anal sphincter. Dr. Adrian testified that this abrasion was "like a rug burn" and was attributable to "something being rubbed there and denuding the upper layers of the mucous membrane." Dr. Adrian attributed this internal abrasion to a penetration with a penis.

These physical findings, which the physicians deemed to be attributable only to sexual molestation, readily distinguish this case from those upon which Aspeytia relies, *Johnson, supra,* and *State v. Allen,* 123 Idaho 880, 853 P.2d 625 (Ct.App.1993), *overruled on other grounds by State v. Gomez,* 126 Idaho 83, 878 P.2d 782 (1994) (as recognized in *State v. Priest,* 128 Idaho 6, 15 n. 3, 909 P.2d 624, 633 n. 3 (Ct.App.1995)). In *Johnson,* a pediatrician who examined two children found no physical signs consistent with sexual abuse but nonetheless testified, based solely on histories given by the children and their mother, that the children had been molested.

*Johnson*, 119 Idaho at 857, 810 P.2d at 1143. This Court held that in the absence of physical findings or specialized expertise in evaluating sexual abuse victims, the pediatrician's opinion was essentially "a judgment on the children's credibility, that is, he believed they were telling the truth." The Court observed that, "In a jury trial, it is for the jury to determine the credibility of a witness, not another witness." *Id.* In *Allen,* a child psychiatrist conducted an hour-long interview with a child who had allegedly been sexually abused and with the child's mother. Based solely on observations of the alleged victim as she recounted her story, and not upon any diagnostic tests or specialized interview techniques that were beyond the common experience of jurors, the psychiatrist opined that the alleged victim actually experienced the events as she claimed. This Court determined that the psychiatrist's opinion in *Allen* was nothing more than an assessment that the victim was truthful, and that the opinion therefore was inadmissible. *Allen,* 123 Idaho at 884–85, 853 P.2d at 629–30.

Circumstances similar to those in *Johnson* and *Allen* are not present here. Drs. Kraal and Adrian reported physical findings, some of which were, in their opinions, consistent only with sexual abuse. There was an adequate factual basis upon which Dr. Kraal and Dr. Adrian could reach the conclusion that J.M.'s injuries were, in all likelihood, a result of molestation, and the interpretation of their physical findings was beyond the experience or knowledge of the average juror.

If Aspeytia's trial counsel had objected to the admission of the physicians' opinions that J.M. had been sexually molested, that objection correctly would have been overruled. Consequently, counsel's failure to object did not constitute ineffective assistance of counsel.

### 3. Dr. Adrian's Testimony About the Incidence of False Allegations of Sexual Abuse Was Not Prejudicial

 We turn next to Aspeytia's contention that Dr. Adrian improperly testified regarding statistical percentages of false allegations of child sexual abuse and that defense counsel's failure to object to the admission of this testimony requires the reversal of Aspeytia's conviction.

The record indicates that *during cross-examination,* defense counsel questioned Dr. Adrian about the incidence of false allegations of sexual abuse as follows:

Q. Do you accept that there are false allegations made?

A. Could you put that—

Q. False allegations of sexual abuse are made by children?

A. Are you asking are they ever made?

Q. Yes.

A. I accept that, yes.

On re-direct examination the prosecutor further questioned Dr. Adrian regarding false allegations:

Q. Doctor, have you had any cases directly dealing with false allegations out of the 800 you have dealt with?

A. We have one that we have considered it in strongly, yes.

. . . .

Q. Or were there any injuries observed?

A. There were no injuries in that particular case.

Aspeytia, on recross-examination, again questioned Dr. Adrian regarding his personal experience with false allegations:

Q. So, out of somewhere between eight and nine hundred children you have seen to date there was one child who in your opinion had not been abused?

A. No. The question was out of the 800 how many were we suspicious of false allegations. And I said there was one particular case where false allegations were a big part of that case and there was no injury in that particular case.

Q. So, then out of the 800, have you seen any since that 800[sic] case, have you seen any that you suspected were false allegations?

A. No.

Q. Okay. So, then out of 900, there was one false allegation?

A. Well, I see a lot of children who haven't made allegations, but parents may

have suspicions, for instance. So, I am not saying out of all 800 kids that I have examined that we have concluded that they have all been sexually molested, not by any means.

Aspeytia characterizes Dr. Adrian's testimony regarding his experience with false allegations of sexual abuse as scientific evidence in the form of the statistical probability of false allegations of sexual abuse and contends that an inadequate foundation was laid for the admission of this testimony in violation of I.R.E. 702.

We agree with Aspeytia's assertion that the prosecutor's questions regarding the incidence of false accusations in Dr. Adrian's experience were objectionable. This Court has recently held that evidence regarding the incidence of false sexual abuse accusations must be based upon more than anecdotal information. *State v. Parkinson*, 128 Idaho 29, 909 P.2d 647 (Ct.App.1996). In *Parkinson* the defendant sought to introduce testimony of a psychologist specializing in the evaluation and treatment of sexual abuse victims to the effect that, in approximately twenty-five to thirty percent of the cases in which his office was involved, the allegations were false. In holding that the testimony was properly excluded, we said:

> This opinion on the statistical incidence of false accusations of sexual abuse was based only on anecdotal information derived from [the expert's] personal experience as a therapist.... Any potential inference of scientific reliability is belied by the very narrow information base and the lack of any scientific methodology underlying this estimate....
>
> ... The record is conspicuously lacking any explication of disciplined inquiry and methodology that would support [the expert's] testimony on the incidence of false accusations of sexual abuse. The trial court correctly excluded this evidence for lack of adequate foundation under I.R.E. 702.

*Id.* at 36, 909 P.2d at 653–54.

■ In Aspeytia's case, no objection to the testimony was made. A timely objection to the prosecutor's questions during redirect examination not only would have allowed exclu-

sion of that testimony but would have avoided the need for defense counsel to return to the subject on recross-examination. Since the evidence was not only inadmissible but also tended to be adverse to the defense, we conclude that trial counsel's failure to object to the prosecutor's questions was deficient professional conduct.

We must next determine whether this mistake by counsel prejudiced Aspeytia. As noted above, one claiming ineffective assistance of counsel must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Pugsley, supra*; *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990). Considering the record as a whole, we conclude that, if this testimony concerning Dr. Adrian's experience with false accusations had been excluded, it is unlikely that the outcome of the trial would have been different. The State presented two medical experts who testified to significant medical findings indicating sexual abuse. Each physician testified to at least one physical abnormality that he believed could have been caused only by molestation. The State's case also included the testimony of J.M.'s brothers, who stated that she reported the abuse to them almost immediately after the alleged occurrence. In addition, J.M.'s testimony was vivid and specific, including a description of how, when she was made to touch her mouth to Aspeytia's penis, "[m]ilk came out" and she "spitted it out." It is likely that this evidence would have resulted in a conviction even if Dr. Adrian's testimony about false allegations had been excluded. Therefore, defense counsel's failure to object to the admission of this testimony does not give Aspeytia a right to relief for ineffective assistance of counsel.

### B. Sufficiency of the Evidence to Support the Verdict

■ Aspeytia asserts that the State did not meet its burden of proving beyond a reasonable doubt that he committed lewd conduct with J.M., a minor under sixteen.

A jury is entitled to d[...]sonable inferences from the evidence p[...]ted. *State v. Babb*, 125 Idaho 934, 943, 877 P.2d 905, 914 (1994); *State v. Erwin*, 98 Idaho 736, 740, 572 P.2d 170, 174 (1977). We will not set aside a jury's verdict if there is substantial evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* On appeal, the evidence is viewed in the light most favorable to the prosecution, and the reviewing court is precluded from substituting its judgment for that of the jury as to the credibility of the witnesses, the weight of the evidence and the reasonable inferences to be drawn from the evidence. *State v. Filson*, 101 Idaho 381, 613 P.2d 938 (1980); *State v. Peite*, 122 Idaho 809, 839 P.2d 1223 (Ct.App. 1992).

Here, the jury heard the testimony of the victim, her two brothers, and two physicians. This evidence is described above and need not be repeated here. It is sufficient to say that the State presented substantial evidence upon which the jury could reasonably find Aspeytia guilty of the offense of lewd conduct with a minor.

## C. Sentencing

At the sentencing hearing Aspeytia's sister testified that the presentence investigator had made comments to her indicating that the investigator believed persons of Mexican descent to be predisposed to sex crimes. The presentence investigator was not called to testify in response to these allegations. Aspeytia contends that this evidence shows that the presentence investigation report (PSI) relied upon by the trial court was the product of a racially biased investigator. Aspeytia also contends that the report was incomplete in that it did not include all of the information required by I.C.R. 32. Aspeytia argues that because of these deficiencies, he is entitled to be resentenced following the preparation of a new presentence report.

The State responds that Aspeytia is barred from raising the issue of the sufficiency of his PSI because he did not object to the report at the sentencing hearing and therefore failed to preserve the issue for appeal. However, because Aspeytia also argues that his attorney was deficient in failing to object to the report, we will address Aspeytia's contention that the PSI was incomplete.

We find that the content of the report does not substantiate Aspeytia's claim that the report is insufficient under I.C.R. 32. First, Aspeytia's argument that the report does not include a discussion of the defendant's values and outlook on life (I.C.R.32(b)(9)), is plainly without merit. A section of the report captioned "Values and Outlook on Life" presents four paragraphs relating Aspeytia's own statements regarding his values, beliefs and hopes. Second, Aspeytia's assertion that a PSI must contain the investigator's assessment of the defendant's suitability for probation and the reasons for such conclusion is not borne out by the applicable rule. Idaho Criminal Rule 32(c) states that "[t]he presentence report may comment generally on the probability of the defendant's successfully completing the term of probation . . .," but does not mandate the inclusion of a comment on this issue. Here, the investigator chose not to provide additional comments or analysis about Aspeytia's potential success in rehabilitation because Aspeytia maintained that he was innocent of the charge. The investigator did comment that "none of the available rehabilitative alternatives appear to be appropriate in this case." It is apparent from the context of that statement that the conclusion was based upon Aspeytia's denial of culpability and upon the widely-held view that sex offenders must first admit the offense in order to benefit from treatment.[3] Finding no substantial flaw in the presentence report, we hold that the absence of an objection to the

3. Aspeytia attached to his appellant's brief affidavits of two psychologists indicating that therapy may enable sex offenders who have been in denial to admit their guilt and that treatment is available for sex abusers without a threshold admission of guilt. We have disregarded these affidavits because they are not part of the record in the district court. Matters not presented to the trial court and made a part of the record are not to be considered on appeal. *Hansen v. Devaney*, 82 Idaho 488, 494, 356 P.2d 57, 60 (1960); *Schneider v. Curry*, 106 Idaho 264, 267, 678 P.2d 56, 59 (Ct.App.1984).

report by Aspeytia's attorney does not indicate ineffective assistance of counsel.

■ With respect to Aspeytia's allegation of racial bias on the part of the presentence investigator, the record establishes that, assuming the truth of the allegation, Aspeytia was not prejudiced thereby. First, the PSI is almost entirely factual. It simply presents information derived from other persons, with very little comment or recommendations from the investigator. Second, Aspeytia has pointed out no information in the report that was inaccurate. Finally, the district court made clear that the alleged racial bias of the investigator, if true, would have no affect on the court's sentencing decision. The court stated:

> At this time the court is going to indicate a couple of things before pronouncing sentence. One is, of course, that any allegations made that people of Mexican culture have more of a tendency to have these acts ingrained in their culture, in my opinion, is completely unsubstantiated.
>
> . . . .
>
> The court has always considered himself racially blind in this regard. If in fact the presentence investigator made that statement, that was clearly out of line.
>
> And as the prosecutor said, [the presentence investigator] is not here to say whether he did so, but I think it is inexcusable if any racist connotations occurred in the presentence report. The court totally disavows any alleged racial statements that may have been made by the presentence investigator and certainly have not been condoned by the court.
>
> ... The conclusions of the presentence investigator at this time will be completely ignored based on these allegations. I do not feel those conclusions in fact add anything to the presentence report because it is completely factual.

We find no error in the district court's response to the allegation of racial bias on the part of the investigator.

■ Aspeytia's final contention is that the sentence imposed by the trial court, a ten-year determinate term of incarceration followed by a ten-year indeterminate term, is unduly harsh ▇▇▇ mounts to an abuse of discretion. S▇▇▇cally, Aspeytia argues that the sentence exceeds that necessary to protect society and that the court did not adequately consider probation as an alternative to incarceration.

We review a sentence on appeal for an abuse of the sentencing court's discretion, taking into account the objectives of sentencing and well-established standards for evaluating the reasonableness of a sentence. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490, (1992); *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App. 1982). "A legal sentence will not be disturbed on appeal unless it is unreasonably harsh in view of the sentencing objectives of protecting society, deterrence, rehabilitation and retribution." *State v. Roberts*, 129 Idaho 194, 200, 923 P.2d 439, 445 (1996). The decision to place a defendant on probation or whether, instead, to relinquish jurisdiction over the defendant is a matter within the sound discretion of the district court and will not be overturned on appeal absent an abuse of that discretion. *State v. Hood*, 102 Idaho 711, 712, 639 P.2d 9, 10 (1981); *State v. Lee*, 117 Idaho 203, 205–06, 786 P.2d 594, 596–97 (Ct.App.1990).

Aspeytia's argument that the district court did not consider probation as an alternative is not supported by the record. The court expressly considered the criteria for probation or imprisonment outlined in I.C. § 19–2521. The court noted that Aspeytia had led a law-abiding life prior to the present offense. The court also observed, however, that because of Aspeytia's continuing denial of guilt, there was not available to the court a reliable psychological evaluation of the risk of reoffense. The court stated that in the absence of such evidence it must guard against the danger that the defendant would offend again if he were placed on probation. In addition, the court concluded that a lesser sentence would depreciate the seriousness of the crime.

In reviewing a sentence, the question before this Court is not whether the sentence imposed is one that this Court would have chosen. Rather, if reasonable minds might

differ as to the appropriateness of the sentence, the discretion vested in the district court will be respected. *Brown, supra; State v. Admyers,* 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App.1992); *Toohill,* 103 Idaho at 568, 650 P.2d at 710. Having independently reviewed the record we cannot say that Aspeytia's sentence is excessive under any reasonable view of the facts.

The judgment of conviction and sentence are affirmed.

WALTERS, C.J., and PERRY, J., concur.