**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51067**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Opinion Filed: November 4, 2025** |
| Plaintiff-Respondent, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | |
| YOVANY GARCIA LOPEZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Randall S. Grove, District Judge.

Judgment of conviction for two counts of lewd conduct with a child under the age of sixteen years, one count of sexual abuse of a child under the age of sixteen years, and one count of felony injury to a child, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Yovany Garcia Lopez appeals from his judgment of conviction for two counts of lewd conduct with a child under the age of sixteen years; one count of sexual abuse of a child under the age of sixteen years; and one count of felony injury to a child. Garcia Lopez argues that the district court abused its discretion by allowing the nurse practitioner to testify as an expert witness because her testimony lacked a reliable scientific basis or methodology. Additionally, Garcia Lopez argues that the nurse practitioner's opinion vouched for the victim's credibility. We hold that the district court did not err in admitting the testimony of the nurse practitioner. Garcia Lopez's judgment of conviction is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In late 2020, the victim, then twelve years old, disclosed to her school counselor that earlier in the year while attempting to break up a fight between Garcia Lopez and his wife, Garcia Lopez strangled the victim. The police were notified, and the case was referred to St. Luke's Children at Risk Youth Evaluation Services (CARES) to investigate in collaboration with the Caldwell Police Department. During her first CARES interview, the victim disclosed that, on multiple occasions, Garcia Lopez touched her breasts over her clothes, put his hands on her inner thighs, kissed her neck, and attempted to kiss her on the mouth. The victim described how Garcia Lopez did this every weekend and that sometimes he would hold her arms down while he kissed her neck. If she did not get scared or try to fight him off during the incidents, Garcia Lopez would be nice to the victim and buy her things afterwards, like toys or ice cream. The victim disclosed that more than once while staying with Garcia Lopez, she woke up without her pants on. The victim explained that while she is a deep sleeper, she never woke up without her pants on when she slept anywhere else. When asked when the abuse started, the victim said that she could not remember because she was "smaller" when it began. The victim again described the time Garcia Lopez strangled her after she tried to break up a fight between Garcia Lopez and his wife. The victim said she disclosed this to her school counselor because, after the strangling incident, she began self-harming by cutting her arms and legs.

Following the initial CARES interview, the victim disclosed further incidents of sexual abuse to her mother and godmother. Based on these additional disclosures, a second CARES visit was scheduled. During the second CARES interview, the victim disclosed that Garcia Lopez would touch her vagina and have sexual intercourse with her when she visited him. The victim said Garcia Lopez was always drunk when the abuse happened and that Garcia Lopez told her not to tell anyone or he would get sent to jail, get deported, and she would never see him again. The victim also said she felt that if she told her mother, Garcia Lopez would come find her and hurt her.

Following these disclosures, Garcia Lopez was charged by indictment with two counts of lewd conduct with a child under the age of sixteen years, Idaho Code § 18-1508; one count of sexual abuse of a child under the age of sixteen years, I.C. § 18-1506; and one count of felony injury to a child, I.C. § 18-1501(1). At trial, the two CARES social workers who conducted the

forensic interviews of the victim testified. The nurse practitioner, Jenna Gere, who medically examined the victim also testified. Gere testified that she diagnosed the victim with child sexual abuse to a reasonable degree of medical certainty. Garcia Lopez objected, arguing that Gere's diagnosis was not based on any scientific or reliable method and instead was vouching for the victim's credibility. The district court overruled the objection. The jury found Garcia Lopez guilty on all counts. Garcia Lopez appeals.

## II.

## STANDARD OF REVIEW

A trial court's decision regarding the admission of expert testimony is reviewed for an abuse of discretion. *State v. Pearce*, 146 Idaho 241, 245, 192 P.3d 1065, 1069 (2008). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

On appeal, Garcia Lopez argues the district court abused its discretion by allowing Gere to testify that she diagnosed the victim with child sexual abuse to a reasonable degree of medical certainty. Garcia Lopez argues this was an abuse of discretion because (1) the basis of Gere's expert opinion lacked a reliable scientific basis or methodology; and (2) Gere's testimony was vouching for the victim's credibility. The State argues the district court did not abuse its discretion by admitting Gere's testimony that she diagnosed the victim with child sexual abuse because Gere was properly qualified as an expert. In support of its argument, the State contends that Gere had significant experience and training in diagnosing child sexual abuse and the district court implicitly found her testimony was supported by information that had sufficient indicia of reliability to satisfy Idaho Rule of Evidence 702. Finally, the State argues that any error was harmless.

Before giving expert testimony, a witness must first be qualified as an expert on the matter at hand. *Pearce*, 146 Idaho at 245, 192 P.3d at 1069. Admissibility of expert testimony is governed by I.R.E. 702, which states that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the

3

expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." There must be some demonstration that the witness has acquired, through some type of training--either education or experience (or a combination of the two)--the necessary expertise and knowledge to render the proffered opinion. *State v. Dutt*, 139 Idaho 99, 104, 73 P.3d 112, 117 (Ct. App. 2003).

## A. Expert Qualifications

Idaho precedent has generally dealt with whether a mental health counselor (as opposed to a medical provider) is qualified to provide a diagnosis of child sexual abuse. For example, in *State v. Konechny*, 134 Idaho 410, 417, 3 P.3d 535, 542 (Ct. App. 2000), this Court held that deciding whether a child who has made allegations of sexual touching has, in fact, been abused which calls for additional expertise beyond the experience of a mental health counselor who provides mental health treatment to the child.

In *Konechny*, the expert witnesses were two counselors offering their opinion as to whether the children in that case were sexually abused. One of the counselors had a bachelor's degree in an "unspecified field" and a master's degree in education. *Id.* at 414, 3 P.3d at 539. The counselor had been working full time at the Sexual Abuse Now Ended (SANE) program, where she focused on treating both sexual offenders as well as the victims of sexual abuse. *Id.* Although qualified to provide mental health treatment, at no point during the counselor's testimony did she "detail any training, experience, skill, knowledge, or education in *identifying* or *diagnosing* children who have been subjected to sexual abuse. To the contrary, the foundational evidence presented only a background in *counseling* or *treatment*." *Id.* at 415, 3 P.3d at 540.

The second counselor also worked at SANE and had a background in counseling victims of sexual abuse. *Id.* at 416-17, 3 P.3d at 541-42. This Court held it was error to allow the counselors to testify as experts and give their opinion as to whether the victims were sexually abused because the counselors were trained to accept the facts given to them by their patients, not to identify and diagnose victims of sexual abuse. *Id.* at 414-17, 3 P.3d at 539-542.

This Court has also held that a foundational showing of expertise to render an opinion that a victim was sexually abused requires more than general education and expertise in mental health counseling. *State v. Eytchison*, 136 Idaho 210, 213, 30 P.3d 988, 991 (Ct. App. 2001). In *Eytchison*, this Court listed factors a trial court should consider when a litigant offers an expert opinion on the diagnosis of sexual abuse: (1) whether the expert possessed specialized knowledge

4

of child development, individual and family dynamics related to sexual abuse, patterns of child sexual abuse, the effects of sexual abuse on a child, the disclosure process, the use and limits of psychological tests, and the significance of developmentally inappropriate sexual knowledge; (2) whether the expert is trained in the interpretation of medical reports or laboratory tests, in the art of interviewing children, and in the diagnostic evaluation of both children and adults; (3) whether the expert is familiar with the literature on child abuse and on coached and fabricated allegations of abuse; and (4) whether the expert has clinical experience with sexually abused children. *Id.*

Unlike the counselors in *Konecnhy*, Gere is a pediatric nurse practitioner, not a counselor. She has medical clinical experience in diagnosing children who have been the victims of physical and/or sexual abuse. Gere holds two active medical licenses and has six years of experience medically diagnosing child victims of sexual abuse. At trial, Gere testified that she has earned the following degrees: a Bachelor of Sociology; a Bachelor of Nursing; a Master of Health Science; and a Master of Nursing. Gere holds two licenses in Idaho, one as a registered nurse (RN) and one as a pediatric nurse practitioner. Gere explained an advantage of being a nurse practitioner is that she can diagnose and treat patients, while an RN cannot. Gere testified that she is a member of the Nurse Practitioners of Idaho, the American Academy of Pediatrics, the Forensic Nurses, International Forensic Nursing, and the American Medical Association. Gere also testified that her clinical rotations all focused on pediatrics, and she has focused her medical career on working with children.

When asked about her qualifications regarding child sexual abuse, Gere testified as follows:

STATE:    All right. Do you have specific training, experience, education in identifying child sexual abuse?
GERE:     Yes.
STATE:    Could you describe that for us, please.
GERE:     So like I said before, nursing school, nurse practitioner school, those were yearlong schooling. I am board certified, so I had to take a certification test. I'm licensed in the State of Idaho to diagnose. As well as we do articles. I do teaching. We have--you know, when I first began, I've done all of my nurse practitionership--or as a nurse practitioner, I've worked at CARES the whole time. So when I first came in, did medical training, did training specifically with my medical director, as well as we do peer reviews, monthly peer reviews with our local team. We discuss abnormal, normal exams.

5

|          | We're doing statewide peer reviews.  We do journal reviews and on-the-job training. |
| STATE:   | And all of this training that you just described, you attended, observed, or experienced, all specifically related to child sexual abuse; is that correct? |
| GERE:    | Yes. |

Based on the factors outlined above, the district court did not err in concluding that Gere qualified as an expert. Gere has specialized knowledge in identifying and diagnosing child physical and sexual abuse. Gere explained that she primarily gained this knowledge through on-the-job training. Gere testified that she has worked in the child abuse sector for six years, first through an online training program, then through shadowing and mentorship, and finally through her position as a nurse practitioner at CARES. Gere has clinical experience with diagnosing sexually abused children and has done so at CARES since 2017. Gere testified that she uses the International Classification of Diagnoses (ICD) as a diagnostic reference, which includes medical diagnoses of child sexual abuse, child physical abuse, and neglect.

While Gere did not testify as to every factor listed above, that does not diminish her expertise or necessarily lead to a conclusion she was not qualified to make a medical diagnosis of sexual abuse in this case. For example, regarding potential false allegations, Gere testified that she believes the child but lets the "trained professionals" do the interviewing. Gere emphasized that her job as a medical provider is to focus on the medical issues; it is not her role to figure out whether the event occurred as the child describes it. Gere testified that she does not try to determine whether the child's narrative of events is truthful, but rather what medical issues are present. Thus, whether a child was coached or fabricated allegations of abuse, is not relevant to Gere's job as a medical provider and does not aid Gere in making a medical diagnosis.

The district court did not err in qualifying Gere as an expert witness.

**B.     Diagnosis of Child Sexual Abuse**

Gere testified that she diagnosed the victim with child sexual abuse to a reasonable degree of medical certainty. Garcia Lopez objected to Gere's opinion in offering a diagnosis and stated, "We haven't heard anything about a methodology at all. Just on-the-job training, a lot of interviews, a lot of contact, but there's no methodology that comes from some peer-reviewed source or anything like that." On appeal, Garcia Lopez renews this argument and, additionally, argues that the basis of Gere's opinion was not beyond the common experience of average jurors and was therefore improper.

6

The State responds that Gere's diagnosis was supported by information that had sufficient indicia of reliability to satisfy I.R.E. 702. The State details the following information: (1) the victim described pain and stinging to her genital area that supported the likelihood that she had been sexually abused before she started her menstrual cycle; (2) the victim had knowledge of sexual matters that were inappropriate for her age; and (3) Gere relied on the ICD to diagnose the victim.

In *Konechny*, this Court addressed the reliability requirement for expert testimony. When the counselors were asked how they reached the basis of their opinions, one counselor said her opinion was based upon reading the CARES interview with one of the victims and the victim's disclosure in that interview; her time with the victim in counseling sessions; speaking primarily with the father, who transported the victim to the session; and periodic phone calls with the victim's mother. *Konechny*, 134 Idaho at 419, 3 P.3d at 544. The second counselor said her opinion was based upon her experience, training, and the consistency of the child's story. *Id.* This Court held that it was error to admit the counselors' opinion testimony because "[n]either counselor described a manner of arriving at her diagnosis that could fairly be characterized as a scientific 'methodology.' There was no description of diagnostic tools that had been demonstrated to be accurate means of determining whether sexual abuse occurred." *Id.* at 419-20, 3 P.3d at 544-45. This Court ultimately concluded:

> In the context of a mental health professional's testimony that sexual abuse has occurred, the indicia of reliability standard requires a showing that the opinion was derived through application of some reliable methodology; that is, a methodology that is reasonably accurate in distinguishing between children who have been sexually abused and those who have not. It also requires that the expert bring to bear a level of skill or a scientific or technical approach that is beyond the scope of the average juror.

*Id.* at 418-19, 3 P.3d at 543-44 (footnote omitted).

In the present case, the district court implicitly held that Gere's diagnosis was based on information that bore a sufficient indicia of reliability to be admissible pursuant to I.R.E. 702. That conclusion is supported by substantial and competent evidence in the record. First, Gere testified that she attempted a head-to-toe physical exam of the victim during the victim's initial visit to CARES. Gere was able to externally examine the victim, test the victim's vision, and take her height and weight, but Gere did not perform a genital exam because the victim did not consent to one and the victim "didn't make specific disclosures of touching to her vagina at that time." The

7

results of the limited exam that Gere was able to perform were "normal," which Gere testified was not surprising. Gere explained that the reason the normal results of the limited exam were unsurprising to her was because it is not uncommon in cases of sexual abuse for there to be a lack of visible injury. Gere testified that physical injury would most likely be visible within the first three days of when the abuse occurred. At the time of the victim's first visit with CARES, it had been more than six months since she had seen Garcia Lopez. Furthermore, Gere clarified that she did not find anything during the exam that physically disproved any of the victim's disclosures.

Next, Gere testified that she considered the statements the victim made during the forensic interview were concerning. Specifically, the victim described Garcia Lopez's hands around her neck, strangling her, and Garcia Lopez touching her breasts over her clothes. When describing the strangling, the victim talked about feeling like she was underwater and drowning. Based on this disclosure, Gere examined the victim's neck and throat and did not see any external injuries but stated that there "could be" internal injuries. However, the victim was eating, sleeping, and breathing normally, so Gere did not have specific concerns about her neck that day.

The victim returned to CARES for a second forensic interview and medical examination. During her second interview, the victim described pain and stinging in her genital area. The victim again refused a vaginal exam. Gere encouraged the victim to leave a urine sample to test for sexually transmitted diseases and pregnancy, but the victim declined. Gere testified that the vaginal pain the victim described made Gere concerned that the victim was prepubescent during some of the incidents. Gere then explained the reasoning for her concern:

GERE: So before women start their period, the vaginal area and the hymen in particular, which is the tissue surrounding the opening of the vagina, is very sensitive. That area doesn't have estrogen because as women we don't have estrogen like we do when we're post period. So the hymen itself is really sensitive, and it would make any touching of the hymen, in whatever regard that would be, very painful and very sensitive, tender, all of that, and it would hurt if that area is touched.

STATE: Okay. Were [the victim]'s disclosures about the pain during intercourse consistent with that pre-period portion of her life?

GERE: Yes and no. I documented she started her period at ten. And children historically, you know based on the child's age, it's hard to know timeframes. We saw her when she was 12 and then 13. So my understanding is this would have been ongoing. So yes, if there was touching to the hymen prior to ten, that would have caused a lot of pain.

8

Gere also testified about other disclosures the victim made during the forensic examination that were of concern to Gere:

> GERE: She specifically said penis going inside vagina, the pain, the stinging, and then just some of the sensory details she gave regarding the incidence.
>
> STATE: Such as?
>
> GERE: So she talked about grunting. She talked about, you know, white stuff coming out. [Garcia Lopez] using his hand to clean up. Those types of disclosures are very concerning.

Finally, Gere testified that she based her diagnosis on the ICD, which is the International Classification of Diagnoses, which includes medical diagnoses of child sexual abuse, child physical abuse, and neglect. Thus, unlike the counselors in Konechny, Gere described the manner at which she arrived at her diagnosis, including the reference to the ICD, which is an objective, diagnostic tool.

While Gere also considered the victim's forensic interviews and discussions with the victim's mother, it is not uncommon in medical diagnoses and does not mean Gere did not utilize a reliable methodology. *See, e.g.*, *Tedder v. Am. Railcar Indus., Inc.*, 739 F.3d 1104, 1109 (8th Cir. 2014) ("Patient-reported symptoms may support part of a diagnosis as long as that diagnosis also incorporates other sources of information."); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("In the actual practice of medicine, physicians do not wait for conclusive, or even published and peer-reviewed, studies to make diagnoses to a reasonable degree of medical certainty."). Indeed, medical providers often make diagnoses from patient self-reported symptoms. In the Federal Rule of Evidence 703 advisory note to the 1972 proposed rules, the committee recognized that "a physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays." While the Idaho version of Fed. R. Evid. 703 does not contain any notes, it is well established that the Idaho Rules of Evidence mirror most of the federal rules:

> Idaho adopted the Federal Rules of Evidence as the Idaho rules in order to obtain uniformity in trial practice in Idaho. In the absence of a ruling from the Idaho Supreme Court to the contrary, we deem it appropriate to follow federal precedent in order to maintain, to the extent possible, consistency between the federal and Idaho rules.

*State v. Woodbury*, 127 Idaho 757, 760, 905 P.2d 1066, 1069 (Ct. App. 1995) (internal citation omitted).

9

Gere testified that her diagnosis was made by considering the totality of all the information gathered:

DEFENSE: But you're saying that just based on what the mom told you that you also would have reached a conclusion to a degree of medical certainty of child sexual abuse?

GERE: So it's the bigger picture I guess is what I'm trying to say. So it's information from the parents, it's information from law enforcement, and the concern in that regard as well as what the child said.

DEFENSE: Okay.

GERE: So it's everything together.

Thus, Gere's methodology included identifying specific disclosures in the forensic interview that may guide her medical exam, performing a physical exam, and gathering information from other relevant sources, including a parent, and referencing the ICD. As noted, Gere participated in monthly peer reviews and had clinical experience diagnosing child sexual abuse. As such, there was sufficient evidence for the district court to conclude that Gere was qualified as an expert and that her diagnosis was based on sufficiently reliable information and methodology to be admissible pursuant to I.R.E. 702.

Determining whether physical symptoms, or lack thereof, accurately corresponds to abuse allegations is beyond the common experience of a juror. "Whether a child has been sexually abused is beyond common experience and allowing an expert to testify on this issue will assist the trier of fact." *State v. Hester*, 114 Idaho 688, 693, 760 P.2d 27, 32 (1988) (footnote omitted) (internal quotation marks omitted). Because Gere's expert opinion was beyond the common experience of the jury and based on a reliable methodology, the district court did not abuse its discretion by allowing Gere to testify as to her diagnosis of child sexual abuse.

**C.     Gere's Opinion was not Impermissible Vouching of the Victim's Credibility**

Garcia Lopez argues that Gere's opinion was impermissible vouching of the victim's credibility because an "expert witness is not permitted to testify regarding the truth or falsity of a victim's claims." Garcia Lopez is correct that vouching is not permitted by expert witnesses. Expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations and therefore does not assist the trier of fact as required by I.R.E. 702. *State v. Perry*, 139 Idaho 520, 525, 81 P.3d 1230, 1235 (2003). Gere, however, was not testifying as to whether she believed the victim, she was testifying as to a medical diagnosis. While it is true that Gere did not report any physical

10

findings that were attributable to sexual abuse, she testified that she did not find anything to disprove the victim's disclosures either and that a lack of physical injury is not uncommon in cases of sexual abuse.

In *State v. Aspeytia*, 130 Idaho 12, 936 P.2d 210 (Ct. App. 1997), this Court clarified that the holding in *State v. Johnson*, 119 Idaho 852, 857, 810 P.2d 1138, 1143 (Ct. App. 1991) was that "in the absence of physical findings *or* specialized expertise in evaluating sexual abuse victims, the pediatrician's opinion was essentially a judgment on the children's credibility." *Aspeytia*, 130 Idaho at 17, 936 P.2d at 215 (emphasis added) (internal quotation marks omitted). This Court has never held that *both* physical findings and specialized expertise are required to give an expert opinion regarding child sexual abuse. Here, Gere had specialized expertise in diagnosing child sexual abuse and the victim reported physical symptoms.

Gere stating that, in her opinion, the victim was sexually abused, is also not vouching because Gere was not asked whether she believed the victim was telling the truth. This issue was addressed in *Reynolds v. State*, 126 Idaho 24, 32, 878 P.2d 198, 206 (Ct. App. 1994). In *Reynolds*, this Court held that it was proper for the prosecutor to ask the expert witness what her opinion was as to whether the victim was sexually molested. *Id.* The expert answered, "In my opinion she was definitely sexually abused." *Id.* We held that this was permissible and stated:

> The prosecution did not ask whether the expert believed the victim was telling the truth. Such a question would have dealt directly with the victim's entire story, including the events of the incident and the identity of the perpetrator. The questions were limited strictly to whether the expert felt the child had been abused. Such a question is permissible, as the characteristics of a sexually abused child are not within the common experience or knowledge of the average juror.

*Id.* Here, although Gere testified that she believes the children who are evaluated by CARES, she emphasized that investigating whether an event happened was not her role as a medical provider and that she leaves the interview to the trained professionals. Gere explained how she does not question the child about the event itself, but instead focuses on medical concerns:

STATE: As a medical professional, do you typically say to a patient who comes in to see you, "No, you're wrong. This thing didn't happen to you, this thing you're telling me happened, this thing did not happen to you"?

GERE: I do not say that.

STATE: Okay. Why?

GERE: First of all, I believe the child. They're also coming in--so my best practice is we let the interview take its course and the trained professionals do that portion. So I don't interview children. So we

11

really just focus on medical. I ask them about their medical, you know, anything that hurts on their body, any concerns that they might have about their genitals. So even though I didn't have the ability, based on her not assenting to do the genital exam, I was able to ask her about any genital complaints she might have.

STATE: Okay. So is it also important for you to consider the fact that you were not there for the event that they were describing?

GERE: Correct.

STATE: So you cannot say no, this didn't happen to you, because you did not observe it?

GERE: Right. And that's not my role as the medical provider. So I don't question a child in the medical exam.

STATE: Okay. Do you ask clarification questions or follow-up questions to ensure understanding?

GERE: Sometimes I do.

STATE: Such as, "You say this hurt. Is it stinging? Is it burning?" I mean, do you ask the type of clarification questions to get to the root of the potential problem?

GERE: So for example, for [the victim] I would have asked if she has any itching, any burning, any discomfort to her vagina that day. Right? I can't necessarily speak about the past; right? But I could ask her in that moment if she was having any concerns then.

To make her diagnosis, Gere listened to the victim describe her physical symptoms, spoke to the victim's mother, performed a medical exam of the victim, referenced an objective medical standard, and then made a medical diagnosis. Informing the jury of a medical diagnosis is not vouching for the victim's credibility. The district court did not err in finding that Gere's opinion was not impermissible vouching of the victim's credibility.

## IV.

## CONCLUSION

The district court properly qualified and admitted the expert witness testimony of Gere because Gere's diagnosis was based on reliable methodology and was not vouching for the victim's credibility. Garcia Lopez's judgment of conviction is affirmed.

Judge LORELLO and Judge TRIBE, **CONCUR**.